## WILLIAM A. SALE, JR. *v.* JOHN DARRAGH.

It is not necessary, in order to take a sale of goods out of the Statute of Frauds, that the delivery and acceptance of a part of the goods to be sold should take place at the time of making the contract. A subsequent delivery and acceptance is sufficient. Disapproving *Seymour* v. *Davis*, 2 Sandf. S. C. R. 239, and approving *Sprague* v. *Blake*, 20 Wend. 61.

The present Statute of Frauds of this state differs materially, in this respect, from the English statute, and from that of this state prior to the Revised Statutes.

What is a sufficient note or memorandum of a contract of sale within the meaning of the Statute of Frauds, and how far parol evidence is admissible to add to or interpret it, considered.

St., being authorized thereto by both parties, effected a sale of 356 bales of hemp from S. to D., and signed the following memorandum of the contract :

"No.                    NEW YORK, 16th August, 1850.
Sold for account of Mr. WM. A. Sale, jr.,
                        To Mr. John Darragh.
            Bales jute hemp a $80.00 per ton, six months.

This hemp is to remain in store at the expense and risk of the seller for the expiration of the first month; thereafter at the expense and risk of the purchaser. Mr. Darragh is to pay for this hemp as he may want to take it away, at the rate of 8 per cent. per annum discount. Tare 6 lbs. per bale."

The greater part of the hemp was delivered to D. in parcels from time to time, was

Sale v. Darragh.

received by him and paid for on delivery, but none of it was delivered until nearly a week after the execution of the contract. *Held,*

I. That the delivery and acceptance of a part of the hemp, though subsequent to the execution of the contract, took the case out of the Statute of Frauds, and rendered D. liable in an action for damages for his refusal to accept all the hemp.

II. That St. being authorized, by both parties, as a broker to effect the sale, a memorandum in writing, signed by him in his own name, was a sufficient note or memorandum in writing, within the meaning of the Statute of Frauds, to charge the parties.

The memorandum failing to show the number of bales agreed to be sold, whether parol evidence was admissible to show what number was agreed to be sold, or that the number or quantity were to be ascertained; and whether the writing thus interpreted would be a sufficient note or memorandum of the contract within the meaning of the Statute of Frauds, *quære?*

It is a general rule of law, that where contracts are reduced to writing, parol evidence will not be received to enlarge, diminish, or in any way alter what is expressed in the writing. But where it is apparent, upon the face of the instrument, that something is contemplated and agreed upon by the parties which they have not defined or expressed with sufficient clearness, parol proof, connecting the instrument with its subject matter, is always allowable to show the intention of the parties.

This rule rests upon the presumption that, as the parties have reduced their contract to writing, they have expressed by it what they intended, and that therefore nothing should be received, except to interpret the writing where they have left what they meant obscure, doubtful, uncertain, or not fully expressed.

But where, by statute, a contract is required to be in writing in order to be valid, *quære* whether, where the parties have failed to express what they meant, the defect can in any case be aided by a resort to parol proof.

APPEAL by plaintiff from a judgment entered on the report of a referee. This action was brought to recover a balance claimed to be due on a sale of 356 bales of hemp. The complaint stated that the plaintiff, on August 16th, 1850, sold the defendant 356 bales of jute hemp, weighing forty-six tons, seventeen hundred weight, and one pound, at $80 a ton; that it was to remain in store at plaintiff's risk for the first month, and at defendant's risk afterwards, and the defendant was to pay for it as he took it away, at eight per cent. per annum discount; that the plaintiff delivered portions of it, and was always ready to deliver the rest, which the defendant refused to receive and pay for, and directed the plaintiff to have the part remaining sold for his

account, which the plaintiff did.   Annexed to the complaint were schedules showing the sales and disposal of the hemp, and the whole account between plaintiff and defendant, as claimed by the plaintiff.   The price of the hemp amounted to $3,748.04; and the complaint prayed judgment against the defendant for the sum of $535.30, balance of account.   The answer, among other things, averred that there was no written contract, and that the sale was void under the Statute of Frauds.   The cause was referred to John L. Mason, Esq., who reported in favor of the defendant.   The following extract from his report shows the facts as found by him:—

" And I further certify and report, that the following facts appeared in evidence before me on the reference :

" That on the 16th day of August, one thousand eight hundred and fifty, the plaintiff sold to the defendant, through a broker, a large number of bales of jute hemp, the terms of which sale were reduced to writing, and a sale note executed therefor by the broker, in the words and figures following, to wit—

" ' NEW YORK, August 16th, 1850.
Sold for account of Mr. WM. A. SALE, JR.,

To Mr. JOHN DARRAGH.

Bales jute hemp, at $80 per ton, six months.

This hemp is to remain in store at the expense and risk of the seller for the expiration of the first month ; thereafter at the expense and risk of the purchaser.   Mr. Darragh is to pay for this hemp as he may want to take it away, at the rate of eight per cent. per annum discount.

Tare 6 lbs. per bale.

JOHN E. FORBES & BRO.

DANIEL L. STURGES,
Broker in Fruits, Spices, Salad Oils, Hemp, and
merchandise generally,
103 Wall-street.' "

This sale note was delivered by the above-named Daniel L.

Sturges (who was a clerk of John E. Forbes & Bro., and by whom the sale was made,) to the plaintiff. No bought note was signed by the broker or his clerk.

The number of bales sold was three hundred and fifty-six, though no number was mentioned in the sold note.

The reason of the plaintiff's selling the hemp, to be paid for by the defendant as he took it away, was, that the plaintiff did not like to take defendant's note for it, and it was to remain, and did remain, until sold and paid for, in the plaintiff's store, or under his control.

The greater part of the hemp was delivered to the defendant, in such parcels as he required, either for his own use, or upon orders given by him on the plaintiff in favor of purchasers to whom he had sold; and such parcels were paid for as they were taken away.

The first delivery to him was on the 23d day of August, one thousand eight hundred and fifty, and the remaining deliveries to him were in different quantities and at different times, in the years one thousand eight hundred and fifty, one thousand eight hundred and fifty-one, and up to the 27th day of January, one thousand eight hundred and fifty-two.

When the defendant required any of the hemp to be delivered, no weighing or other act was necessary to be done, except payment for the bales ordered. The hemp had all been weighed, and the weight marked on the bales, shortly before the sale to the defendant.

A portion of the hemp, however, remained unsold, which the plaintiff refused to take or pay for, alleging it to be damaged.

In consequence of such refusal, the plaintiff, in the months of February and March, one thousand eight hundred and fifty-two, sold these damaged bales, thirty-three in number, at a greatly reduced price.

It was not proved that the defendant gave any special authority to the plaintiff to sell these damaged bales on his account, neither was there any evidence that the plaintiff gave the defendant notice of his intention so to sell them.

Upon stating the account, the plaintiff's loss amounted to $535; to recover which, with interest from November 30th, 1852, this action was brought. No objection was made to the amount claimed, if the plaintiff was entitled to recover at all.

The facts proved on the trial, in relation to the damage, are not stated, because it is deemed unnecessary to consider the question whether the loss arising therefrom is to be borne by the plaintiff or defendant.

My conclusions at law, upon the facts above stated, are—

I. That there was no sufficient note or memorandum in writing of the contract, made and subscribed by the defendant, as required by the first subdivision of the third section of the act entitled ' Of Fraudulent Conveyances and Contracts, relative to goods, chattels, and things in action.'

II. That there was not such an acceptance and receipt of part of the hemp contracted to be sold, as is required by the second subdivision of the said third section of the act aforesaid, in order to charge the defendant in this action as the purchaser of the whole."

The following opinion was also given by the referee, showing his reasons for the conclusion to which he arrived :—

" There was no sufficient memorandum in writing of the contract between the parties in this case. The note offered in evidence, signed by the broker, was radically defective in not mentioning the number of the bales which were sold. It was, moreover, the sale note signed by the broker on behalf of the seller, and delivered to him, and not the bought note or memorandum on behalf of the defendant, the purchaser, who is sought to be charged. *Sivewright* v. *Archibald*, 6 Eng. L. and Eq. R. 286. But the defect in the note itself was fatal. To allow it to be supplied by parol proof, would manifestly be to repeal the statute.

Whether there was a sufficient acceptance of part of the goods to take the contract out of the statute, is a point of much greater difficulty, and on which the authorities are conflicting.

The acceptance in this case, if at all, was some time after the

contract was made, and the question arises, whether the acceptance must be at the time of the contract, or can be made at any time afterwards.

The defendant contends that the delivery and acceptance of part of the goods sold must be at the time of the sale, and that a subsequent acceptance of part does not make the agreement valid as to the whole; and, in support of this proposition, quoted *Seymour* v. *Davis*, (2 Sand. S. C. R. 239), which fully sustains his position. On the other hand, the plaintiff relies upon the case of *Sprague* v. *Blake* (20 Wend. 61,) as 'an authority in his favor; and it certainly does lay down the proposition broadly, that the part delivery of goods sold under a parol contract, and acceptance by the vendee, need not, by the statute, be made at the time of the contract; and the facts of the case rendered a decision on this point necessary. It is, therefore, a direct authority in support of the plaintiff's proposition. This case, though decided in 1838, is not adverted to in the case of *Seymour* v. *Davis*, decided ten years afterwards. It appears to me, however, that the cases relied on by the court in *Sprague* v *Blake*, are by no means conclusive on the question.

In *Vincent* v. *Germond*, (11 John. R. 283), the court did not decide that acceptance of part, after the making of the contract, took it out of the statute; but that the defendants' taking the three oxen afterwards was evidence that the whole number had been delivered to them at the time of the contract. 'The defendants,' they say, 'dealt with the oxen as their own, and as if in their actual possession, without asking any permission from the plaintiff for so doing. This must have been done in virtue of the right acquired by the original contract and *transfer of the property*.'

The same remark applies to *Chaplin* v. *Rogers*, (1 East. 192), which was referred to and relied on by the court in both the preceding cases. The court did not, in that case, hold that the taking away of part of the hay, two months after the bargain, was an acceptance; but that it was evidence of there having been a delivery and acceptance when the bargain was made.

Neither does the case of *Outwater* v. *Dodge* (6 Wend. 397,) show that a subsequent acceptance of part makes an oral contract good. The contract in that case was for a large number of barrels of fish. The bargain was concluded in the evening, and the fish was to be delivered the next morning to the defendant, who was to send a person to receive it; and the jury found that the defendant had accepted it at the time agreed on. It was not a case of delivery and acceptance of part of the subject matter of the contract, but of the *whole;* it was an *executed contract.*

The case of *Jennings* v. *Webster* (7 Cow. 256,) decides that, with regard to bulky articles which are not in the actual possession of any one, the words 'I deliver' is 'a good delivery, if the vendee afterwards takes possession of the thing delivered and disposes of it. His subsequently taking posession is evidence of the previous delivery, and of his acceptance.'

The only other case referred to by the court in *Sprague* v. *Blake*, is *Hart* v. *Satterly*, (3 Camp. 528). In that case, the court held that the whole of the goods purchased under a verbal order had been accepted by the defendant.

The question now under consideration cannot arise where the whole of the goods have been accepted. The exception in the statute only refers to acceptance of a part. In none of the cases cited, and, I believe I may add, in no reported case except that of *Sprague* v. *Blake*, is it anywhere held that the taking away of part of the goods after the contract, is an acceptance within the meaning of the statute; but merely that such subsequent taking away is evidence of the previous acceptance at the time of the contract. And the decision in that case appears to me to be contrary to the whole current of authority on this subject.

It is said, in *Smith* v. *Surman*, (9 B. & Cress. 561), by LITTLE-DALE, J., that 'It was formerly held, that where the goods which were the subject matter of the sale, were not to be delivered till a future day, as one of the three things required by the 17th section (of the English statute, which is the same substantially as the 3d section of our present statute,) viz., a part acceptance

could not be complied with at the time of the contract, it was not a case within that section of the statute; but later authorities have established that such a contract, whether the goods are or are not to be delivered immediately, is within the statute. Those cases, therefore, have established, that if two things required by the 17th section can, at the time of the contract, be carried into effect, the case is within it, although one cannot be complied with;' and he refers to *Rondeau* v. *Wyatt*, (2 H. Bl. 67), *Cooper* v. *Elston*, (7 T. R. 14), and *Alexander* v. *Comber*, (1 H. Bl. 20), as establishing his position. If this be the fact, and there can be no doubt it is, it is conclusive to show that both the earlier and more modern judges held that the acts to be done, to take a parol contract out of the statute, must be done at the *time of making the contract.*

In *Shindler* v. *Houston*, (1 Comstock, 261), BRONSON, J., remarked—' A writing must be made. Part of the purchase money must be paid, or the buyer must accept and receive part of the goods. Mere words of contract, *unaccompanied by any acts*, cannot amount to a delivery. To hold otherwise would be repealing the statute.' Although this particular question was not presented by the case, yet the remark shows what the opinion of this learned jurist was on the point we are considering.

I think, therefore, that, with the exception of *Sprague* v. *Blake*, the remark of the late Mr. Justice SANDFORD, in *Seymour* v. *Davis*, (2 Sand. S. C. R. 263), was strictly true—that there was no authority for saying that a parol agreement to deliver goods at a future time becomes valid as to the whole, by the delivery of a portion subsequent to such time.

On the other hand, there is great force in the argument, drawn from the alteration in the Revised Statutes, in favor of the plaintiff's position.

The English statute, and our own previous to the revision of 1830, are silent as to the *time* when any note or memorandum in writing must be executed, or a part of the goods accepted, or part of the purchase money paid; and the uniform construction of the courts, as to the time, was founded on what was supposed

to be the reason of the thing, and the manifest intention of the legislature. In the revision of 1830, however, our legislature inserted, with regard to part payments, the words '*at the time*,' so that part payment of the purchase money *must*, by force of this legislative enactment, be made at the time of the bargain. The *insertion* of these words with respect to *payment*, and the *omission* of them with respect to *part acceptance*, and the *memorandum* in writing, certainly gives great reason for the inference that the legislature did not intend that these things must be done at the time; and the inference is much strengthened by reference to the revisers' notes, which were submitted to and were before the legislature at the time of this enactment. It will be there seen that the revisers proposed the words "*at the time*" should be inserted in each of the three subdivisions of this section. The legislature, having this alteration distinctly proposed to them, reject it in the two first and insert it in the last, viz., the one with regard to part payment. The inference appears to me to be very strong, if not irresistible, that the legislature did not mean to confine either the written memorandum, or the delivery and acceptance, to the time of the contract. And, indeed, there seems to be no reason why the written memorandum should be confined to that time. If the parties, after the making of the contract, agree upon its terms, and reduce them to writing, there seems to be no reason why it should not be binding. All the mischief intended to be guarded against will have been, by the memorandum, entirely prevented. And so, too, with respect to an acceptance of part of the goods: if the subsequent delivery and acceptance cannot be accounted for except by the fact of the previous agreement, there seems to be no reason why such subsequent acceptance should not be equally efficient as if made at the time. The evidence of the agreement is as strong in the one case as the other, and the danger of uncertainty as to the terms of the bargain equally great in both.

I am therefore inclined to consider the decision of the court in *Sprague* v. *Blake*, (20 Wend. 61), although contrary to the whole tenor of previous decisions both in this country and in

England, as more in accordance with our present statute than those decisions.

But it is not necessary for me to pass upon this question in the present case, because I think it is clear that there never was a delivery and acceptance of any part of the hemp so as to satisfy the statute. The plaintiff always retained his lien upon it until it was paid for. No delivery of any parcel on payment entitled him to take the residue without payment. Now, I understand the law to be well settled, that, in order to take a parol sale out of the statute, 'there must be a vesting of the possession of the goods in the vendee, as absolute owner, discharged of all lien for the price on the part of the vendor, and an ultimate acceptance and receiving of the property by the vendee so unequivocal that he shall have precluded himself from taking any objection to the quantum or quality of the goods sold.'—Per WRIGHT, J., in *Shindler* v. *Houston*, 1 Comst. 261; *Smith* v. *Surman*, 9 B. & Cress. 561. Such was not the fact in the present case. The plaintiff retained his lien over the whole, and only relinquished it as to any part of the goods on receiving payment. Mr. Sturges, the witness who settled the bargain, says expressly, that 'Mr. Sale permitted him to sell the hemp to Mr. Darragh, to be paid for as he took it away, as he did not like to take Mr. Darragh's paper for it,' and it always remained, in fact, until sold and paid for, in the plaintiff's store, and under his control.

Upon these grounds, then—I. That there was no sufficient note or memorandum of the sale, and, II. That there was not such a delivery and acceptance of part as is contemplated by the statute—I am of opinion that the complaint should be dismissed.'"

Judgment having been entered upon the referee's report in favor of the defendant, dismissing the complaint, the plaintiff appealed.

*Benedict, Burr & Benedict,* for the appellant.

I. It was proved that the defendant gave the plaintiff entire authority to sell *all* the hemp for him. It was in consequence of

this authority, and not in consequence of any refusal of the defendant to take them, that the plaintiff sold the damaged bales; and they were sold just as he had sold all the rest, about which there is no dispute as to his authority.

II. The sale note was a sufficient memorandum to satisfy the statute, certainly, taken in connection with the fact that there was a bill of parcels given to him, and received by him without objec tion.   Browne on Stat. of Frauds, 388, 389; *Salmon Falls Manufacturing Co.* v. *Goddard*, 14 How. 446.

III. Part of the hemp was "accepted and received by the buyer," which, under the second division of the third section of the Statute of Frauds, upholds the contract even if there is no memorandum.   *a.* It is not necessary that part of the goods shall be accepted at the time the contract is made.   *Sprague* v. *Blake*, 20 Wend. 61; Browne on Stat. of Frauds, 344–7, and cases there cited.   The reasoning of the referee upon this point is impregnable.   *b.* The referee has found that "the greater part of the hemp was delivered to the defendant," and paid for by him as it was taken away.   How, then, can it be said that part of the goods has not been accepted by the buyer?   Browne on Stat. of Frauds. *c.* To hold that the acceptance of the part must be such as to vest the possession *of the whole* in the buyer, is to repeal the statute, which only requires the acceptance *of a part*—all that is required is that a part shall be accepted under the contract.   Ib.

IV. The "receipt and acceptance," by Darragh, of "a part of the hemp" made the contract good, and parol proof of what the contract was, was admissible.   The referee has found that it was a sale of 356 bales of hemp; and, there being no dispute as to the amount, the plaintiff was entitled to judgment for the amount claimed, and judgment for that amount should be rendered in his favor, with costs.

*John Anthon,* for the respondent.

I. There is no memorandum in writing to take the case out of the Statute of Frauds.   The "omission of the thing sold" in the paper produced, and the "non-subscription of the party to be

charged," are each fatal to that document. To supply either by parol, would be to repeal the statute. 2 R. S. (3d ed.) 195; *Bailey* v. *Ogden*, 3 John. 399; *Peltier* v. *Collins*, 3 Wend. 459; *Davis* v. *Shields*, 26 Wend. 341; *James* v. *Patten*, 2 Seld. 11; *Sivewright* v. *Archibald*, 6 Eng. L. and Eq. 286.

II. The parol contract, in this case, was void under the Statute of Frauds when it was made, and could by no subsequent act become a valid agreement. Subsequent acts might establish a new contract of sale embodying more or less of the terms of the original arrangement, but cannot reanimate the previous void agreement. *Seymour* v. *Davis*, 2 Sandf. S. C. 244.

III. The delivery and acceptance of the several parcels of hemp under the agreement, or in consequence of it, made so many several and distinct contracts of sale, upon each of which each party had all the actions and remedies incident to an actual sale *pro tanto*. *Seymour* v. *Davis*, 2 Sandf. 245.

IV. By the terms of the parol agreement, the vendor was never to part with the actual possession of any part of the hemp until he was paid for it, and on this principle the parties acted.

V. The vendor always, until payment of each part, retained the actual possession in his own store, under his own key, and insured it as "undelivered" property. There never was a delivery of any more than was actually paid for, and after such delivery the remainder was retained in actual ownership. The successive deliveries spent themselves with each sale, and gave no force to the original contract. "To take the case out of the statute, there must be a vesting of the possession of the goods in the vendee as absolute owner, discharged of all lien for the price on the part of the vendor, and an ultimate acceptance and receiving of the property by the vendee so unequivocal that he shall have precluded himself from any objections to the quantum or quality of the goods sold. To constitute a delivery and acceptance, *words* are not sufficient." *Shindler* v. *Houston*, 1 Comst. 269; *Rathbun* v. *Rathbun*, 6 Barb. 98.

VI. The claim in this case, which is for the thirty-three bales of damaged hemp, and for the storage and insurance of the whole

parcel, can only be sustained upon the principle of an entire valid contract, whereby the title to the whole became so vested in the defendant that he could have removed the same without payment, at pleasure—all which is directly in the teeth of the contract, by which plaintiff, on account of his want of confidence in the defendant, was not bound to deliver any part until actual payment, which was to be within six months.

By the Court, DALY, First Judge.—It is very clear, in this case, that the referee erred. It appeared, by the testimony of Sturges, that the defendant spoke to him about buying the hemp for him. Sturges accordingly opened a negotiation with the plaintiff and the plaintiff's clerk Hanford, the plaintiff agreeing that Sturges might sell the hemp to the defendant, to be paid for as it was taken away. Sturges agreed to the terms of the sale as stated in the memorandum or sale note, which expressed every thing except the number of bales and the weight, which were to be ascertained afterwards. The names of the buyer and seller were specified, the price per ton, the time within which the hemp sold was to be paid for; that it was to remain in the plaintiff's store at the expense and risk of the seller for one month, and thereafter at the expense and risk of the purchaser,—the defendant to pay for the hemp as he might want to take it away, at the rate of 8 per cent. per annum. This note or memorandum in writing was subscribed by Sturges in his own name, and given by him to the plaintiff. The defendant, in about a week after the making of the note, sent for eight bales, which were delivered to him; and, in the course of a year and a half, he sent for the greater part of the hemp, by orders from time to time, which was delivered upon his orders, and for which he paid at the rate agreed upon.

From this state of facts it appears that Sturges, who was a clerk of John E. Forbes & Bros., brokers, had authority from both parties to effect the sale. His authority, as respects the defendant, having been confirmed by the defendant's sending for the hemp from time to time and paying for what he received, as

agreed upon by Sturges.   Having authority from both parties, as a broker, to effect a sale, a memorandum in writing of the contract, subscribed by Sturges in his own name, would be sufficient within the statute to charge the parties.   *Goom* v. *Aflalo*, 6 B. & C. 117 ; Russell on Fact. and Brok. 66, 67 ; Blackburne on Cont. of Sale, chap. v.   But the difficulty in this memorandum is, that it does not designate the quantity sold.   It refers to bales of jute hemp at $80 per ton, which is again referred to as "this hemp." *"This hemp* is to remain in store," &c.   " Mr. Darragh is to pay for *this hemp* as he may want to take it away," &c.   A question therefore arises, as to whether this was a sufficient note or memorandum of a contract within the meaning of the statute.   As the writing refers to bales of hemp, designating them as "this hemp," it might be read as referring to a particular lot of hemp the exact quantity of which could be shown by other evidence, or interpreted as a contract to sell a particular lot, the exact quantity of which was not known at the time of the making of the contract, but was to be ascertained afterwards—as if the parties had agreed in writing upon the sale of all the bales in a particular loft, or all that might come by a particular vessel.   Parol evidence, in such a case, would not add anything to the contract, or alter or vary its terms; but would simply explain more fully and definitely an intent that was apparent upon the face of the instrument.   It is a general rule of evidence, where contracts are reduced to writing, that parol evidence will not be received to enlarge, diminish, vary, or alter what is expressed by the writing, but is always admissible to aid in interpreting it.   Where it is apparent upon the face of the instrument that something is contemplated and agreed upon by the parties, which they have not distinctly defined, or expressed with sufficient clearness, parol proof, connecting the instrument with its subject matter, is always allowable to show what the parties intended and meant.   But the reason upon which this familiar rule of evidence rests, it must be confessed, is distinguishable from that which, according to the preamble of the Statute of Frauds, originally led to the enactment of the provision that certain agreements should be void, if not in writing.  1 Evans'

Stat., p. 211. In respect to the rule of evidence, it rests upon the presumption that, as the parties have reduced their contract to writing, they have expressed by it what they intended, and that therefore nothing should be received except to interpret the writing where they have left what they meant obscure, doubtful, uncertain, or not fully expressed. But where there is an agreement for the sale of goods of a greater value than fifty dollars, and no part of the purchase money is paid, or no portion of the goods have been delivered, the Statute of Frauds makes it essential to the very existence of a contract that it should be in writing; and if a contract cannot be clearly and intelligibly extracted from the writing, it may be said that the foundation is wanting on which alone it can rest. In other cases, a contract may be partly in writing and partly in parol; but the design and intent of the statute was, in the cases specified, to compel parties to put their agreement in writing; and, if they have failed to express what they meant, it is at least doubtful if the defect can be aided by a resort to parol proof. The writing was designed to be the evidence of the contract, and the strong leaning of the authorities is, that it must clearly appear by the writing what the parties agreed to do; that it must show a valid and binding contract entered into which can be enforced, and that in that respect it cannot be aided, assisted, or helped out by parol proof. *Boydell* v. *Drummond*, 11 East, 160; *Chuan* v. *Cooke*, 1 Sch. & Lef. 22; *Rose* v. *Cunningham*, 11 Ves. 550; *Elmore* v. *Kingsgate*, 5 B. & C. 583; *Acebal* v. *Levy*, 10 Bing. 376; *Lord Ormond* v. *Anderson*, 2 B. & B. 368; *Hind* v. *Whithouse*, 7 East, 558; *Kenworthy* v. *Schofield*, 2 B. & C. 948; *Seagood* v. *Meale*, Prec. Chy. 560; *Peltier* v. *Collins*, 3 Wend. 465; *Bailey* v. *Ogden*, 3 Johns. 418; *Weightman* v. *Caldwell*, 4 Wheat. 85. I do not mean to express my full assent to this view of the construction of the Statute of Frauds, as I am strongly inclined to think that the design and object of the statute does not demand so strict and rigid an interpretation. Nor am I prepared to admit that parol evidence would not be receivable here, to show that the bales of hemp referred to in this written memorandum meant a particular lot, the number or quan-

tity of which was to be ascertained, and that, as thus interpreted, it would not be a sufficient note or memorandum of the contract, within the meaning and intent of the statute; (see *Wildman* v. *Glossop*, 1 Barn. & Ald. 9; *Valpy* v. *Gibson*, 4 Com. Bench, 837; . VAN NESS, J., in *Abeel* v. *Radcliffe*, 13 Johns. R. 300; *Blay len* v. *Bradley*, 12 Ves. 446); but, as the point would require an extended examination, embracing a long review of the authorities, I prefer, therefore, to rest our decision, as to the error of the referee, upon another ground.

Conceding that this was not a note or memorandum under the statute, the evidence in the case fully established an agreement for the sale of 356 bales of jute hemp, upon the terms and conditions stated in the writing, which was afterwards consummated and became a valid contract under the statute, by the delivery and acceptance, by the defendant, of the greater part of the hemp.  The evidence establishing such an agreement and partial delivery is, in my judgment, very clear.

Forbes, a broker, whose clerk, Sturges, effected the sale, testified that the defendant told him, about the time of the sale, that he wanted to buy all the jute hemp that was then in New York. Sturges swore that the defendant spoke to him about buying the hemp; that the negotiation was conducted by him; that he made the purchase in two hours; that he saw the hemp in a store in Water-street, before it was sold; that he knew it to be the plaintiff's hemp; that the hemp he sold to the defendant was the lot he saw; that he told the defendant that the plaintiff had such a lot of hemp, and where it was, referring to it as hemp of such a mark and quality in the cellar in Water street; and that the result was, that he bought the lot for him; that the sale note expressed everything except the number of bales and their weight; that they did not put the number in the sale note, because they did not know whether it was 340 or 360 bales; that that was all that was to be ascertained, and the quantity was left to be filled up.  He further testified that he saw some of the hemp afterwards in another street, which was said to belong to the Water-street lot; and the defendant's clerk testified that part

of it was kept in Beaver-street, and the balance in the plaintiff's store in Water-street; that the plaintiff had no other lot of hemp at the time the sale was made to the defendant; and that a bill of the hemp, as to quantity and amount, specifying the amount in dollars and cents, was given by him to the defendant, and that the defendant made no objection to the bill. On his further examination he stated, "My impression is so strong that it amounts to a conviction, that, shortly after the sale, I gave Darragh a bill of parcels of this purchase, giving the amount in dollars and cents, but I would not like to swear to it positively; I cannot be positive enough to swear to the circumstances." He further testified, without objection, to an entry made by him on the plaintiff's books, on the day of the date of the sale note, of a sale of 356 bales, with the marks and weights of the bales, corresponding with the schedule annexed to the complaint, and forming a part of it.

The referee, by his report, finds, among other conclusions of fact, that although the number of bales was not mentioned in the sale note, that the number sold was 356, and that the greater part of it was delivered to the defendant in such parcels as he required, either for his own use or upon orders given by him on the plaintiff, in favor of purchasers to whom the defendant had sold, between the 23d of August, 1850, and the 27th of January, 1852, and that such parcels were paid for as they were taken away.

Having thus found the facts, he finds, as one of his conclusions of law, that there was not such an acceptance and receipt of part of the hemp contracted to be sold as is required by the statute, in order to charge the defendant in this action as the purchaser of the whole; his other conclusion of law being, that there was no note or memorandum within the meaning of the statute.

I confess myself at a loss to understand upon what ground the referee came to the conclusion that there was not such an acceptance and receipt of part of the hemp contracted to be sold as is required by the statute, unless it was upon the authority of a case to which we are referred in the respondent's points, (Sey-

*mour* v. *Davis*, 2 Sandf. S. C. R. 245), decided in the Superior Court, of which court the learned referee was formerly a member, in which it was held that a delivery and acceptance of part of the goods agreed to be sold must, within the meaning of the statute, take place *at the time of the making of the contract.* That if there is a delivery of a part afterwards, it will not reanimate the previous void agreement, but constitutes a separate and distinct contract, upon which an action may be maintained for the price of what has been delivered. This decision was founded in a mistake. The late Mr. Justice SANDFORD, in support of the conclusion arrived at, delivered an elaborate opinion reviewing the English cases, as well as the authorities in this State down to the time of the Revised Statutes, but, by a singular oversight, the court omitted to look into the Revised Statutes, where they would have found that a material change had been made in that portion of the Statute of Frauds relating to the sale of goods, the revisers having introduced a provision in respect to time, but confining it to the payment of part of the purchase money, which must be made at the time of making of the contract. The statute, as thus altered, received a judicial construction by the Supreme Court in *Sprague* v. *Blake*, (20 Wend. 61), in which it.was held, ten years before this decision in the Superior Court, that a *subsequent* acceptance in whole or in part of the article agreed to be sold, rendered the contract valid,—which was an authority binding upon the Superior Court when *Seymour* v. *Davis* was decided; and any question upon this point was finally put at rest by the decision of the Court of Appeals in *McKnight* v. *Dunlop*, (1 Seld. 537), in which it was expressly held that a verbal agreement for the sale of personal property exceeding fifty dollars, is valid if a part of the property has been delivered to the purchaser and accepted by him in pursuance of the agreement, although such delivery and acceptance took place several months after the making of the verbal agreement. The verbal agreement in that case was made in June for the sale of 5,000 bushels of malt, 1400 bushels of which were delivered and accepted in the months of August and September next following. Upon the authority of *McKnight* v. *Dun-*

*lop*, therefore, the delivery and acceptance of a large part of the hemp between the 23d of August, 1850, and the 27th of January, 1852, rendered the verbal agreement for the sale of the whole a valid and binding contract under the statute.

The referee found that it was not proved that the defendant had given the plaintiff any special authority to sell the damaged bales on his account, and that there was no evidence that he, the plaintiff, had given the defendant notice of his intention to sell them. The evidence reported by him, shows that the testimony in respect to a general authority to sell was explicit and uncontradicted. The plaintiff's clerk, Hanfield, testified that the defendant "ordered us to sell the jute for him as much as we could, and I did so ;" and, again, " I am perfectly certain that we were authorized by Mr. Darragh to sell the hemp for him ; he wished me over and over again to sell it for him, and would ask me if I had done so·; my impression is that I reported to him the sales we made, but cannot say. I saw Darragh long before the sale of the damaged bales ; had conversations with him about the damage near that time. * * I don't know that he ever gave me any directions with regard to that particular parcel. After the hemp was all sold, I gave Darragh an account of the transaction. * * I recollect that he objected to the damage." It is very clear, from this testimony, that a general authority was given by the defendant to the plaintiff's clerk to sell as much of the hemp as he could, without any reservation as to the bales that were damaged, which were thirty-three in number. The damage to these bales was not shown to have occurred through any negligence on the part of the plaintiff. It was damaged by dry rot, supposed to have been occasioned by the absorption of moisture from the floor of the place where it was stored, though it was on high ground, and the floor was dry when the hemp was placed on it.

The extent of the defendant's liability was not gone into by the referee ; for, having arrived at the conclusion that there was no contract for the sale of the 356 bales, all other questions in the case became immaterial. As the report must be set aside, it would be better, perhaps, that we should not express any opinion

as to the amount which the plaintiff was entitled to recover upon the evidence; for, as there must be a rehearing, testimony may be introduced which may materially affect that question. It is enough for us to say that upon the evidence, as it now stands, the plaintiff was entitled to recover, and that for that reason the report must be set aside.

Judgment reversed, and new trial ordered.