## Case No. 635.
### ATLAS NAT. BANK v. F. B. GARDNER CO. et al.

[8 Biss. 537;[1] 19 N. B. R. 213.]

Circuit Court, E. D. Wisconsin. June, 1879.

CORPORATION—BANKRUPTCY OF STOCKHOLDER AND OFFICER—OFFICER DE FACTO—POWER TO ACT.

1. The individual bankruptcy of a person, who is a stockholder in, and a director and officer of, a corporation which is not in bankruptcy, does not incapacitate him from exercising his functions as such officer of the corporation, nor render inoperative and void as to third parties the acts and conveyances of the corporation done and executed through him as its representative.

2. Where by the law under which a corporation was created, it was required that the directors and officers should be stockholders and be elected for one year, and the president became bankrupt and subsequently acted as the president of the corporation: *Held*, that notwithstanding his bankruptcy, he was the president de facto of the corporation, and as such his acts were, in the absence of fraud, the acts of the corporation.

In equity. This was a creditor's bill. The leading facts in the case were these: In 1876, and for a considerable time prior thereto, the F. B. Gardner Company was a corporation organized under a law of Wisconsin, owning a large quantity of real estate and personal property, and was engaged in the manufacture of lumber, at Pensaukee, in Wisconsin. In 1875 the corporation executed a mortgage to one White upon a large part of its lands and real property to secure certain indebtedness, which mortgage was afterwards transferred to and held by complainant, and was during the year 1876 foreclosed in this court, the bill to foreclose being filed March 11, 1876. After sale of the mortgaged property and at the October term, 1876, a judgment for a deficiency amounting to twenty-one thousand one hundred and six dollars and eighteen cents was rendered in favor of the complainant against the defendant company, upon which execution was issued and returned nulla bona. On the 10th day of March, 1876, the stock of the defendant company consisted of five thousand shares of one hundred dollars each; of which the defendant, F. B. Gardner, held four thousand nine hundred and eighty-nine shares, one John Spry held ten shares and one J. C. Gardner held one share. These three parties constituted the board of directors; F. B. Gardner being the president and J. C. Gardner being the secretary of the company, and until the 4th day of September, 1876, the books of the corporation showed the ownership of stock as above stated. On said 10th day of March, 1876, a petition for the adjudication of F. B. Gardner as a bankrupt was filed in the district court of the United States for the northern district of Illinois, and on the 28th day of March, he was adjudicated bankrupt. On the 29th day of April, 1876, an assignee in

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

bankruptcy was appointed. On the 2d and 31st days of August and the 2d day of September, 1876, the defendant company, F. B. Gardner acting as president and J. C. Gardner acting as secretary, made conveyances of numerous tracts and parcels of lands, then owned by the company and not covered by complainant's mortgage, to E. O. Grosvenor, H. C. Durand, Herman Ruther, Elijah M. Haines, George Schecht, Geo. L. Tracy, Martin Ryerson, E. Meyer, the heirs of Robert McMullen and one Mrs. Ross (all of whom are defendants in the present bill), to secure the payment of indebtedness then owing by the company to said parties respectively, the conveyance to Durand being in trust for the benefit of other parties who were then creditors of the corporation, and who were also defendants in this bill; all of which conveyances purported to be and were executed as the deeds of the corporation. On the 4th day of September, 1876, there was a sale at public auction by the assignee in bankruptcy of F. B. Gardner of the four thousand nine hundred and eighty-nine shares of stock he held in the defendant corporation, such sale having been originally advertised to take place on the 3d day of August, and having been postponed until the 4th day of September. It was claimed by complainant that the adjudication of F. B. Gardner as a bankrupt by the district court in Illinois, the appointment of an assignee and the assignment to him of the bankrupt's estate on the 29th day of April, 1876, operated to extinguish his ownership of the stock in the defendant company, and to transfer such ownership to the assignee, and therefore, to disable Gardner thereafter to act as a director and officer of the corporation, and as a consequence take from him the power to make for the company the conveyances of property before mentioned; that the parties receiving the conveyances had knowledge at the time, that Gardner had been adjudicated a bankrupt; that such conveyances were made when the defendant company was insolvent, and when it was expected that there would be a deficiency arising on the sale of the premises covered by complainant's mortgage which was then in process of foreclosure, and that these conveyances were fraudulent and void.

The defendants answered the bill, alleging that the conveyances of real estate to them by the defendant company were made to secure the payment of just and bona fide indebtedness then owing to them, and that the same were made in good faith, and denying all charges of fraud or fraudulent intent in their several transactions with the defendant corporation.

W. T. Burgess, for complainant.

Luther S. Dixon, for defendants.

After disposing of other questions in the case, the opinion of the court proceeded as follows:

DYER, District Judge. There remains for consideration another question, and which was the principal one discussed at the bar, namely, the effect of the bankruptcy of F. B. Gardner upon his power to act in the transaction sought to be anulled, as a director and as the president of the defendant company. The position is taken by complainant's counsel that the effect of the bankruptcy proceedings instituted against Gardner, in Illinois, in March, 1876, was to transfer his ownership of stock in the company to the assignee in bankruptcy, and that thereafter he was disqualified from acting as an officer of the company, and consequently that he had not the power to make for and in behalf of the company the conveyances to the defendants which the bill seeks to set aside, [nor to make the settlement with Baker on the 31st of August, 1876.] [2] The testimony does not show when the stock held by Gardner came into the actual possession and control of his assignee in bankruptcy, but it tends to show that after the bankruptcy of Gardner, the business of the corporation, so far as it had business to do, proceeded as it had done before. The stock was advertised to be sold by the assignee, as part of the assets of Gardner, on the 3d day of August, 1876; but the sale was postponed to the 4th day of September. It is charged that this postponement was procured by Gardner, and as part of a scheme to enable him to consummate the transactions complained of, before there should be a sale. The testimony I think fails to sustain this charge. The only testimony on the subject is that of Gardner himself, who says that some of his creditors suggested a postponement in order to ascertain something further about the value of the stock; that he had some idea of bidding on the stock, and that he made suggestions to others to bid; that he thought the stock would bring more if other parties were prepared to bid, but they did not then interest themselves in it, and the sale was adjourned thirty days. He says further, that he might have had some influence in having the sale postponed, but the circumstances as they are disclosed by the testimony fail to establish a fraudulent purpose in procuring the postponement.

It seems not very material why the sale was adjourned, if the position is sound that by virtue of the bankruptcy proceedings, and by operation of law, Gardner was divested of the right and power to act as an officer of the defendant company, after the assignment in bankruptcy. Now the question fairly stated is, does the individual bankruptcy of a person who is a stockholder in and director and officer of a corporation which is not in bankruptcy, to such extent incapacitate him from exercising his functions as such officer of the corporation as to render inoperative and void, as to third

parties, the acts and conveyances of the corporation when done and executed through him as its representative. A further feature of the case, in connection with the question, is, that Baker at the time of his settlement, and most of the other defendants at the time they took their conveyances and mortgages, had knowledge or information in a general way that Gardner was in bankruptcy, some of the parties being creditors of both the corporation and Gardner. By the statute under which the corporation was organized, it is provided that the stock, property, affairs and business of the corporation shall be under the care of at least three directors to be chosen annually by the stockholders, and who shall be stockholders, and shall hold their offices for one year, and until others shall be chosen in their stead. Further, that the directors shall choose one of their number president and such other officers as may be required, who shall hold their offices one year, or until a majority of the stockholders choose others in their stead. Power is given the corporation to acquire, mortgage and dispose of real and personal property, and the stock is declared to be personal property, transferable only on the books of the corporation. And it is to be observed, that there is no statutory declaration of a vacancy in the office if an officer ceases to be a stockholder. The question that is presented for solution may perhaps, in view of the manner in which it arises, be said to be one of first impression. In the absence of fraud, I can hardly think that its determination is to be affected by the fact that the third parties dealing with the corporation knew that Gardner was in bankruptcy. Complainant's case must stand or fall upon the proposition that Gardner had not power to act as a director or representative of the corporation, because the ownership of his stock had passed to his assignee in bankruptcy, and therefore that his acts were void. If the affirmative of this proposition be sound, it would seem that the individual bankruptcy of Gardner absolutely vacated his office of director and president of the corporation, so that he could not thereafter be such officer either de jure or de facto. I cannot bring my mind to such a conclusion. For even if the legal title to the stock passed to the assignee in bankruptcy by virtue of the bankruptcy proceedings, still, up to that time Gardner had been an officer of the corporation, duly chosen. His term of office had not yet expired. The statute under which the corporation was created, provided that he should hold his office till another should be chosen in his stead, and it would seem that, so far as third parties were concerned, if he did not continue to be an officer de jure, he was thereafter an officer de facto, whose acts would be binding on the corporation, and would be the acts of the corporation. It is true the statute of incorporation provides that the officers shall

---

[2] [From 19 N. B. R. 213.]

be stockholders, but that provision is directory, and, as before observed, there is no statutory declaration that a vacancy shall be deemed to exist if the officer, before his term expires, shall cease to be a stockholder. It has been held that one who is elected an officer in a corporation by the body in which the power to elect is vested, but by a less number of that body than the charter authorizes, is an officer de facto, and that his acts. as respecting third persons, are valid.

In the case of Bank of U. S. v. Dandridge, 12 Wheat. [25 U. S.] 64, where it appeared "that the directors of the parent bank, empowered to establish offices of discount and deposit, subject to such rules and regulations as they should deem proper, passed a by-law, directing 'that the cashier of each office shall give a bond * * * with two or more approved securities with condition for his good behavior and faithful performance of his duties to the corporation,' and a fundamental article of the constitution of the bank directed 'that each cashier or treasurer, before he enters upon the duties of his office, shall be required to give bond,' etc., it was held that a cashier appointed and permitted to act in his office, without giving such bond, or any bond whatever, was a legal agent of the corporation; that his acts and contracts within the scope of his authority were valid, whether in favor of the bank or against it in favor of third persons, and that the charter and by-law were directory in this particular, and the taking of the bond, not made a condition precedent. It was admitted, however, that if the statute had prescribed that the cashier should not be deemed for any purpose in his office until an approval of his official bond by the proper board, his acts would have been utterly void unless his bond had been given and approved." Ang. & A. Corp. § 285. Just so, it may be said, would be the fact in the case at bar, if the statute declared that upon ceasing to be a stockholder, the office of director should be deemed vacant. Before his bankruptcy, Gardner was an officer de jure; afterwards he continued to act under color of right, and so was an officer de facto. If a corporation elect a person a director who is ineligible to that office and permit him to act as such, the corporation will be bound by the acts which he performs within the scope of the authority possessed by a director. Despatch Line, etc., v. Bellamy Manuf'g Co., 12 N. H. 205. And as his acts cannot be questioned by the corporation, they cannot be by those who claim under the corporation, or collaterally. And it is to be borne in mind that the power of Gardner to act as an officer of the corporation is questioned, not by direct proceeding to vacate his office, but by a party who stood originally in the position of secured creditor, in a proceeding against other creditors, whose demands, presumably bona fide and valid, have been secured through the acts

and instrumentalities, the validity of which is questioned. And so far at least as such creditors are concerned, their equities seem to be equal to those of complainant, provided their transactions with the corporation are untainted by fraud. On the whole, the only satisfactory conclusion I can arrive at is, that, notwithstanding his bankruptcy, Gardner was director and president de facto of the corporation, and as such, in the absence of fraud, the acts performed by him were the acts of the corporation, and that the transactions of the corporation, consisting of the settlements, conveyances and mortgages in question, were valid and should not be disturbed. Bill dismissed.