In the Matter of the Application of the COMMISSIONERS OF THE STATE RESERVATION to take certain lands at Niagara Falls.

THOMAS V. WELCH, as Receiver, etc., Appellant, *v.* THE IMPORTERS AND TRADERS' NATIONAL BANK et al., Respondents.

A corporation may be legally organized under the General Manufacturing Act (Chap. 40, Laws of 1848), and its business carried on for the first year, although the persons named in the certificate of incorporation were not shareholders; and a mortgage executed pursuant to a resolution of directors, who were not shareholders, is not for that reason invalid.

When a corporation has been legally organized, its existence may continue after an event which would be a sufficient cause for its dissolution by the court, and, when dissolved for violating the laws under which it exists, the rights of the creditors, who have become such since the time when it had, by some act of commission or omission, forfeited its right to exist, cannot be ignored, and such of its assets as have been seized by the court must, in the absence of statutory directions, be distributed among the creditors according to the principles of equity.

While, as a general rule, a director, trustee or executive officer of a corporation is without power to bind it or its shareholders by a contract authorized by or entered into with himself and for his individual benefit, if the contract so entered into is, in all respects, just as between the parties, and all of the shareholders and trustees are competent to assent, and, with full knowledge of the terms of the contract, do assent and direct that it be made, it is binding on the corporation and cannot be avoided by its shareholders or by persons who subsequently become its creditors.

A corporation organized under said act executed to W., its president, and one of its trustees, a mortgage on certain of its real estate to secure a debt justly due and owing by it to him. The execution of the mortgage was not formally assented to in writing by stockholders owning two-thirds of the stock, and assent filed as required by said act as amended in 1864 (Chap. 517, Laws of 1864). Subsequently the three trustees (three constituting a full board), by resolution unanimously adopted, directed the president and treasurer to execute a new mortgage to W., and on the same day the said trustees, who owned all of the stock, signed a written assent to the execution of the mortgage. This was executed the next day, and thereupon the first mortgage was discharged and surrendered. The mortgage with the assent were concurrently filed and recorded, although the mortgagee had directed the assent to be first filed. At this time the corporation and W. were solvent. This mortgage W. assigned as collateral security for certain indebtedness

of his; at the same time he certified in writing that the mortgage was given to secure the payment of a lawful indebtedness of the corporation to him for the full amount secured, and, as president of the corporation, that the security was good and valid in all respects; the assignee, believing these representations, advanced money on the faith thereof.  Thereafter, the corporation having become insolvent, in an action by a creditor it was dissolved and a receiver of its assets appointed. The mortgaged property having been taken by the state, by virtue of the right of eminent domain, in proceedings to determine the right of the parties to the sum awarded as compensation, *held*, that the creditors, holding the mortgage as security, were entitled to the amount which the company, at the time of the execution of the second mortgage, owed the mortgagee, upon the indebtedness secured; that the mortgage was not invalid, even if it appeared that there was in reality but two shareholders when the assent was assigned, and that one of the trustees was not a shareholder; that as between the assignee of the mortgage and the receiver, the filing of the assent simultaneously with the filing of the mortgage for record was a sufficient compliance with the act.

(Argued June 9, 1890; decided October 7, 1890.) ·

APPEAL from order of the General Term of the Supreme Court in the fifth judicial department, made November 11, 1887, which affirmed an order of the Special Term, so far as it directed the payment of $41,099.88 to the Importers and Traders' National Bank, and $9,277.53 to Henry C. Hulbert, as hereinafter stated.

On December 17, 1865, the Niagara Falls Paper Manufacturing Company was organized pursuant to chapter 40 of the Laws of 1848, and the acts amendatory thereof, with a capital stock of $85,000, divided into 170 shares of $500 each. The articles of association filed provided that Lauren C. Woodruff, Joshua H. Darling and Stoughton Pettibone should be the trustees of the corporation for the first year.   At the organization, Pettibone subscribed for one share of stock, for which a certificate was issued, but it does not appear how many shares were subscribed for by, or were issued to Darling.   However, it is neither asserted nor found that he was not a shareholder. In 1857, fifty additional shares were issued, making the capital stock $110,000.   Lauren C. Woodruff continued to act as trustee until May 5, 1885, when the judgment dissolving the

corporation for insolvency was entered.   Stoughton Pettibone
continued to act as trustee until April 4, 1883, when he assigned
his share to Woodruff and resigned his office.   It does not
appear when Darling ceased to be a trustee or shareholder, but
at some time prior to 1879, the date not appearing, Woodruff
transferred one share to Lauren W. Pettibone, who then
became a trustee, and continued to act as such until April 4,
1883, when he transferred his share to Woodruff, resigned
his office, and on the same day was succeeded by Josephine W.
Winslow, who received on that day a transfer of twenty shares
from Lauren C. Woodruff, her father, and she remained a
trustee until November 7, 1884, when she resigned.   Neither
Stoughton Pettibone, Lauren W. Pettibone nor Josephine W.
Winslow paid anything for the shares issued to them.   From
1864 to the date of the dissolution of the corporation, Lauren
C. Woodruff owned all of the shares except those standing in
the names of the Pettibones and his daughter, and from its
organization until its dissolution, he was a trustee and the
president thereof, and controlled all of its operations.   Stough-
ton Pettibone was its secretary, treasurer and acting superin-
tendent from its incorporation until April or May, 1883,
when he was succeeded by Henry C. Cordley.   In March,
1867, a tract of land, known in this litigation as number three,
was conveyed to this corporation, which on the 2d day of
February 1879, it mortgaged to Lauren C. Woodruff, to
secure the payment of $50,000 in five annual installments,
with semi-annual interest, which mortgage was duly recorded
February 7, 1879.   The referee found that the sum, to secure
which this mortgage was given, was justly due and owing by the
mortgagor to the mortgagee, which finding has been confirmed
by the Special and General Terms.   The execution of this
mortgage was not formally assented to in writing by share-
holders owning two-thirds of the stock of the corporation,
although the president, who (with the secretary and treasurer)
executed it in behalf of the company, then owned more than
three-fourths of its stock.   In 1879, and for several years
before, Henry C. Hulbert and Joseph H. Sutphin, were part-

ners under the firm name of H. C. Hulbert & Co. and were engaged in business in the city of New York, and in 1879, said firm was a creditor of Woodruff, who, wishing further credit, tendered, as security, the mortgage above described, which was rejected because its execution had not been assented to by shareholders owning two-thirds of the stock.    Such negotiations were had, that Hulbert agreed to accept as security for future credit a new mortgage to be duly executed.    To carry out this arrangement Lauren C. Woodruff, Stoughton Pettibone and Lauren W. Pettibone, who were then the acting trustees of the corporation (three constituting a full board) by a resolution unanimously adopted August 21, 1879, directed the president and treasurer to execute a new mortgage to Woodruff for $50,000.    On the same day, Woodruff, Stoughton and Pettibone, then owning all the stock of the company, assented in writing to the execution of the mortgage.    August 22, 1879, the mortgage was executed to Woodruff to secure the payment of $50,000 August 22, 1884, which and the stockholders assent, were concurrently filed and recorded August 25, 1879, though the mortgagee directed that the assent should first be filed.    On the execution of the last mortgage, the first was canceled of record and surrendered. On the twenty-seventh of the same month, the last mortgage was assigned to Henry C. Hulbert " as collateral security for the payment to him, or his assigns, of all the debts and liabilities of every name and nature of myself and L. C. Woodruff & Co. and the Niagara Falls Paper Manufacturing Company, which he now holds, or which he may hereafter acquire by any means."    This assignment was duly recorded November 15, 1884.    At the time of the execution of the assignment, Woodruff was indebted to the Importers and Traders' National Bank in the sum of $50,000, which loan he desired should be continued, and it was then agreed between Woodruff, Hulbert and the officers of the bank, that Hulbert should hold the mortgage as security for any sum that Woodruff might then be, or thereafter be indebted to the bank after satisfying any debts owing to him by Woodruff.

April 30, 1883, chapter 336 of the laws of that year was passed, which authorized the state of New York to acquire, by condemnation, lands near Niagara Falls for public purposes, pursuant to which the mortgaged premises were, on the 27th day of October 1884, condemned and acquired by the state, the commissioners awarding as compensation to the persons interested therein the sum of $137,660, which was deposited under the order of the court to wait the determination of the claims of the rival creditors. January 5, 1885, one of the creditors of the corporation brought an action against it, alleging that it was insolvent and asking that it be dissolved and a receiver appointed; in which action a judgment was entered May 5, 1885, dissolving the corporation and appointing Thomas V. Welch receiver thereof, who claims to be entitled to this fund as receiver, for distribution among the creditors, the bank and Hulbert claiming to be entitled to it through the aforesaid mortgage. The referee found that at the date of the last mortgage, the mortgagor owed the mortgagee $33,997.40, and that February 1, 1886, the date of his report, interest to the amount of $13,268.13 had accumulated, and that there was then due thereon $47,265.53, of which sum he directed that there be paid to Henry C. Hulbert, as trustee for the Importers and Traders' National Bank, $37,988, and to him individually $9,277.53. Exceptions were filed to this finding by all of the parties to this appeal. On the case coming on to be heard at Special Term, on the referee's report, evidence and the exceptions, it was found and adjudged that there was due on the mortgage February 1, 1886, $50,377.41 (thus increasing the amount found by the referee $3,111.88), of which $41,099.88 was directed to be paid to Henry C. Hulbert as trustee for said bank, and $9,277.53 to Hulbert individually. With this exception (so far as it relates to this appeal), all of the findings and decisions of the referee were confirmed and adopted as the findings and decisions of the Special Term. On an appeal to the General Term the order of the Special Term (so far as it related to these rights of the litigants) was affirmed.

*George Wadsworth* for appellant. The mortgage from the company to Woodruff was invalid and void, and no one is entitled to receive any part of this fund by virtue thereof. The act under which the company was organized, prohibited such a corporation from mortgaging or giving any lien upon its property. (Laws of 1848, chap. 40, § 2; 2 R. S. [7th ed.] 1731, § 2; Laws of 1864, chap. 517, § 2; Boone on Corp. § 140; *Bartholomew* v. *Bentley*, 1 Ohio St. 37; *Vincennes University* v. *Indiana*, 14 How. [U. S.] 268, 273; *Mathews* v. *Skinker*, 62 Mo. 329; *Ex parte Willcocks*, 7 Cow. 402; *Daws* v. *N. R. Ins. Co.*, Id. 462; *Viele* v. *Osgood*, 8 Barb. 130–133; *Beatty* v. *M. Ins. Co.*, 2 Johns. 110, 114; *Head* v. *P. Ins. Co.*, 2 Cranch, 127, 166; *Thomas* v. *R. R. Co.*, 101 U. S. 71; *McCollough* v. *Moss*, 5 Den. 567; *Philips* v. *Wickham*, 1 Paige, 590; *People* v. *Twaddell*, 18 Hun, 427, 429; *Robertson* v. *Bullions*, 9 Barb. 64, 94; *Gould* v. *Clark*, 34 N. H. 148, 156; *D'Arcy* v. *T. K. H., etc., R. W. Co.*, L. R. [2 Ex. Div.] 158, 162; Morawetz on Corp. §§ 1008, 1009; Bigelow on Estoppel, 286, 288, 466, 477; 2 Morawetz on Corp. § 681; *Gardner* v. *Odgen*, 22 N. Y. 232; *Davoue* v. *Fanning*, 2 Johns. Ch. 252; *C. C. Co.* v. *Bennet*, 30 Barb. 553; *Claflin* v. *F. & C. Bank*, 25 N. Y. 293; *Fulton* v. *Whitney*, 66 id. 548; *Hoyle* v. *P. & M. R. Co.*, 54 id. 329; *Scholle* v. *Scholle*, 101 id. 171; Pom. Eq. Juris. § 958; *Welch* v. *Woodruff*, 20 N. Y. S. R. 840, 844; *Dincomb* v. *N. Y. H. & N. R: R. Co.*, 84 N. Y. 190, 199; *Anderton* v. *Aronsen*, 3 How. Pr. [N. S.] 217, 219, 229; *M. E. R. W. Co.* v. *M. R. W. Co.*, 14 Abb. [N. C.] 103, 252, 253, 272; *Barr* v. *N. Y., L. E. & W. R. R. Co.*, 96 N. Y. 444, 450; *Butts* v. *Wood*, 37 id. 317; *R. S. Bank* v. *Averill*, 96 id. 471, 472; *Crocker* v. *Whitney*, 71 id. 166; *N. T., etc., Co.* v. *Miller*, 33 N. J. Eq. 55; 2 R. S. [7th ed.] 1531, § 1, 1533, § 2; *Vail* v. *Hamilton*, 85 N. Y. 453; *Williams* v. *W. U. T. Co.*, 9 Abb. [N. C.] 419, 428; *Van Dyck* v. *McQuade*, 86 N. Y. 38; *People* v. *A. M. L. I. Co.*, 74 id. 177, 181; *Saltus* v. *Pruyn*, 18 How. Pr. 513, 514; *Carpenter* v. *B. H. G. M. Co.*, 65 N. Y. 43; *Lord* v. *Y. G. F. Co.*, 99 id. 547;

*Morford* v. *Farmers' Bank*, 26 Barb. 268; *Bank of Genesee* v. *Patchen Bank*, 13 N. Y. 309; *B. C. Bk.* v. *E. S. D. Co.*, 30 Barb. 421; *Olmstead* v. *Keys*, 85 N. Y. 593; *Walton* v. *N. F. L. A. Co.*, 20 id. 32; *St. John* v. *A. M. L. I. Co.*, 13 id. 31; 32 Alb. L. J. 403, 404.) It was error to award payment of L. C. Woodruff's debt to H. C. Hulbert & Co. out of the fund, and that part of the order should be reversed. (*Wadsworth* v. *Lyon*, 93 N. Y. 201; *Cavalli* v. *Allen*, 57 id. 508, 513; *Sutphen* v. *Fowler*, 9 Paige, 280; *Smith* v. *Felton*, 43 N. Y. 419; *Lindsay* v. *Jackson*, 2 Paige, 581; 3 R. S. [5th ed.] 634, § 12; *D., L. & W. R. R. Co.* v. *Burkhard*, 36 Hun, 57, 59; *Barnes* v. *Barrow*, 61 N. Y. 39, 42; *Ward* v. *Stahl*, 81 N. Y. 406, 408; *N. M. B. Assn.* v. *Conkling*, 90 id. 116, 122; *Ludlow* v. *Simond*, 2 Caines' Cas. 1; *Walsh* v. *Bailie*, 10 Johns. 180; *Pennoyer* v. *Watson*, 16 id. 100; *Ackerman* v. *Hunsicker*, 85 N. Y. 43, 52.) The receiver is not estopped from denying the validity of this bond and mortgage, nor from contesting the amount due thereon. (*Bush* v. *Lathrop*, 22 N. Y. 535; *Union College* v. *Wheeler*, 61 id. 88; *Ingraham* v. *Disborough*, 47 id. 421; *Schaefer* v. *Reilly*, 50 id. 61; *Green* v. *Warwick*, 64 id. 220; *Crane* v. *Turner*, 67 id. 437; *Viele* v. *Judson*, 82 id. 32; *W. C. Co.* v. *Hathaway*, 8 Wend. 480, 483; *Payne* v. *Burnham*, 62 N. Y. 73; Colebrooke on Col. Sec. 238, 244, §§ 184, 189.) The certificate which Mr. Woodruff gave does not create an estoppel. (*Austin* v. *Munro*, 47 N. Y. 360, 366, 367; *Bennett* v. *Whitney*, 94 id. 302; 1 Morawetz on Corp. 483, § 517; *Wardell* v. *U. P. R. R. Co.*, 103 U. S. 651; *Koehler* v. *B. R. F. I. Co.*, 2 Black. 715, 720; *Coleman* v. *S. A. R. R. Co.*, 38 N. Y. 201; *Butts* v. *Wood*, 37 id. 317; *Hoyle* v. *P. & M. R. R. Co.*, 54 id. 314; *Clafflin* v. *F. & C. Bank*, 25 N. Y. 293; *Blake* v. *B. C. R. R. Co.*, 56 id. 485; *W. S. L. S. Bank* v. *S. Co. Bank*, 95 U. S. 557; *Ogden* v. *Murray*, 39 N. Y. 202; *Bliss* v. *Matteson*, 45 id. 22; *Conro* v. *P. H. I. Co.*, 12 Barb. 27; *Abbot* v. *Am. H. R. Co.*, 33 id. 578; *Voltz* v. *Blackmar*, 64 N. Y. 440, 446; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 id. 30, 64.) But aside from the question of Woodruff's power, the receiver is

not estopped. 1. The certificate is not under the seal of the company. 2. The company could not act because it had not the requisite number of stockholders or trustees. 3. Even if the certificate was in proper form and duly executed, it was void, because the making of the mortgage was prohibited by law, and the company cannot be estopped to deny an act which the law forbids; a statute cannot be evaded by estoppel. (*N. Y. & O. M. R. R. Co.* v. *Van Horne*, 57 N. Y. 473; *W. A. Co.* v. *Barlow*, 63 id. 62; *Conro* v. *P. H. I. Co.*, 12 Barb. 27; *People* v. *U. Ins. Co.*, 15 Johns. 358; *N. Y. F. I. Co.* v. *Ely*, 2 Cow. 678; *Halsted* v. *Mayor, etc.*, 3 N. Y. 430; *De Vume* v. *Rianhard*, 9 Daly, 406; *Kent* v. *Q. M. Co.*, 78 N. Y. 158, 166; *Soper* v. *B. & R. R. R. Co.*, 19 Barb. 310; *N. Bank* v. *Norton*, 1 Hill, 572; *Dabney* v. *Stevens*, 40 How. Pr. 341; Bigelow on Estoppel, 286, chap. 9; *Town of South Ottawa* v. *Perkins*, 4 Otto, 261.)

*A. R. Dyett* for respondent. The bond and mortgage for $50,000 are valid. They are properly executed and acknowledged. The consent of the stockholders was filed simultaneously with the record of the mortgage, and that is sufficient. (*G. S. Co.* v. *Whitin*, 69 N. Y. 328, 338.) The bond and mortgage in any event are valid, *pro tanto*. (*Carpenter* v. *B. Co.*, 65 N. Y. 43, 53.) All the elements of an estoppel are here. (18 N. Y. 392, 394; 30 id. 226, 230, 519, 541; 24 Hun, 304–306; 89 N. Y. 637; *Fleishman* v. *Stern*, 90 id. 110, 115; *C. Bank* v. *Bank of Commonwealth*, 50 id. 575, 584; Laws of 1848, chap. 40, §§ 3, 4; Laws of 1860, chap. 269, § 1; *Lovett* v. *G. R. Church*, 12 Barb. 67; *Partridge* v. *Barbour*, 25 id. 146; Laws of 1861, chap. 170, § 1; 1 R. S. 600, § 6.) A corporation may be estopped from setting up that an act done by it is *ultra vires*. (*S. H. B. Co.* v. *E. H. B. Co.*, 90 N. Y. 607; *Payne* v. *Burnham*, 62 id. 69, 72; *Bissell* v. *M., etc., R. R. Co.*, 22 id. 258; *City of Lexington* v. *Butler*, 14 Wall. 283; *E. C. R. Co.* v. *Hawkes*, 5 H. L. Cas. 331, 373; *M. N. Bank* v. *G. Works*, 101 Mass. 57; Dillon on Mun. Corp. § 108; *Curven* v. *Mayor, etc.*, 79 N. Y. 519; *Woodruff* v. *E.*

*R. Co.,* 93 id. 615; *N. R. Bank* v. *Aymar,* 3 Hill, 262; *F., etc.,* v. *B. & D. Bank,* 16 N. Y. 137, 138.) But if it be necessary in this case to go so far, we insist that our bond and mortgage, having been executed with the consent of all the stockholders, save in any event the Pettibones and Woodruff's daughter, and the former having surrendered their stock to Woodruff and the latter having, by the instrument in evidence executed by her, ratified and assented to our bond and mortgage, they are valid and cannot be attacked as *ultra vires.* (*Bissell* v. *M. R. R. Co.,* 22 N. Y. 258; *S. H. B. Co.* v. *E. II. M. Co.,* 90 id. 607, 613, 614; *U. S. I. Co.* v. *Reed,* 2 How. Pr. [N. S.] 253, 254, 256; *Kent* v. *Q. M. Co.,* 78 id. 159, 184, 185; *Graves* v. *Gouge,* 69 id. 154; *Smith* v. *Rathburn,* 23 Hun, 150; *Wertheim* v. *Paige,* 10 Wkly. Dig. 26; *Duncomb* v. *N. Y. & H. R. R. Co.,* 84 N. Y. 199; *Barnes* v. *Brown,* 80 id. 537.) By the arrangement testified to by Hulbert, between him and his partner, the goods were sold and the money advanced by him individually, but if this be not so, by that arrangement Hulbert became equitable assignee of his partner's interest in the firm's account against Woodruff. An assignment of a chose in action by parol without delivery is good. (*Kisley* v. *P. Bank,* 11 Hun, 484; 83 N. Y. 318, 328; *Craig* v. *Parris,* 40 id. 185; *O'Neil* v. *N. Y. C. R. R. Co.,* 60 id. 138; *Bolen* v. *Crosby,* 49 id. 183; Story's Eq. Juris. § 64; *Hasbrouck* v. *Paddock,* 1 Barb. 340.) The three trustees were all trustees *de facto,* and their right to act could not be questioned collaterally by anybody. (*H. R. W. S. R. R. Co.* v. *Kay,* 14 Abb. [N. S.] 191; *People* v. *Mattier,* 2 id. 289; *In re S. A. Church,* 14 Abb. Pr. 424; *Lovett* v. *G. R. Church,* 12 Barb. 67; 19 Wend. 135, 144; *Partridge* v. *Badger,* 25 Barb. 146; *People* v. *S. R. R. Co.,* 57 N. Y. 161, 171, 172; *Morrison* v. *Sayre,* 40 Hun, 465; *Gordon* v. *Boppe,* 55 N. Y. 655; *Reed* v. *Keese,* 60 id. 616, 617; 28 Moak's Eng. Rep. 450; *Bissell* v. *M., etc., R. R. R. Co.,* 22 N. Y. 258; *Morrison* v. *Sayre,* 40 Hun, 465, 468.)

FOLLETT, Ch. J.  The receiver, who is the appellant, asserts that the mortgage given August 22, 1879, by the corporation to Lauren C. Woodruff, is void for the following reasons : (1) Because there were but two shareholders when the assent to mortgage the property was signed ; (2) Because but two of the three persons were shareholders, who, assuming to act as trustees, met and, by a resolution, authorized its execution ; (3) Because Woodruff participated as shareholder, as trustee, and as president in its execution to himself ; (4) Because it was not given for a debt owing by the mortgagor to the mortgagee ; (5) Because the written assent of the shareholders was not filed with the county clerk until after the mortgage was executed.

In considering these objections it should be borne in mind that in addition to the other facts, it was found that Hulbert and the officers of the Importers and Traders' National Bank believed that the mortgage was given to secure a debt, and was legal ; also " that at the time of the making of said bond and mortgage, dated August 22, 1879, the Niagara Falls Paper Manufacturing Company and the said Woodruff were solvent, and able to pay the amount thereof, and so remained until after Hulbert had advanced all the money and sold all the goods to Woodruff and the company as aforesaid ; and until after the Importers and Traders' National Bank had extended payment of Woodruff's debt of $50,000 for over four years."

The third section of the Manufacturing Act provides : " The stock, property and concerns of such company shall be managed by not less than three, nor more than thirteen trustees, who shall respectively be stockholders in such company."

The second section of chapter 517 of the Laws of 1864, as amended by chapter 481 of the Laws of 1871, provides :

" § 2. Any corporation formed under the said act, passed February seventeenth, eighteen hundred and forty-eight, or of the acts amending or extending the said act, may secure the payment of any debt heretofore contracted, or which may be contracted by it, in the business for which it was incorpo-

rated, by mortgaging all or any part of the real and personal estate of said corporation ; and every mortgage so made shall be as valid to all intents and purposes, as if executed by an individual owning such real or personal estate, provided, that the written assent of the stockholders owning at least two-thirds of the capital stock of such corporation, shall first be filed in the office of the clerk of the county where the mortgaged property is situated." The only change made by the amendment of 1871 is the addition of the words "or personal" to the section as passed in 1864. The enabling part of this section was enacted to relieve corporations from the prohibition against mortgaging their property, contained in the second section of chapter 40 of the Laws of 1848 (*Lord* v. *Yonkers Fuel Gas Co.*, 99 N. Y. 547) and the proviso, in respect to the assent of shareholders, is for their protection. (*Greenpoint Sugar Co.* v. *Whitin*, 69 N. Y. 328; *Rochester Savings Bank* v. *Averell*, 96 id. 467 ; *Lord* v. *Yonkers Fuel Gas Co., supra.*) All of the shareholders having assented to the execution of the mortgage, the proviso was literally complied with and its chief, if not its only, object attained. The security is not invalid, because there were but two shareholders when the assent was signed. It affirmatively appears that two of the three persons named in the certificate of incorporation as trustees for the first year, were shareholders, and it does not appear that the third was not, nor is it alleged that the corporation was not legally organized. However, this question seems to be set at rest by the judgment in *Davidson* v. *Westchester Gas Light Co.* (99 N. Y. 558), which arose under chapter 37 of the Laws of 1848, the provisions of which, in respect to the qualifications of directors for the first and ensuing years, are the same as those contained in chapter 40 of the laws of the same year. It was held in the case cited that the corporation could be legally organized, and its business carried on during the first year, though the persons named in the certificate of incorporation were not shareholders, and that a mortgage executed pursuant to a resolution of directors who were not shareholders, was not, for that reason, invalid.

(Morawetz on Corp. [2d ed.] § 507.) It must be assumed that this corporation was legally organized, and, that for some years, its business was carried on by three trustees who were shareholders. When a corporation has been legally organized its existence may continue after an event which would be a sufficient cause for its dissolution by the court; and when dissolved for violating the laws under which it exists, the rights of the creditors, who have become such since the time when it had, by some act of commission or omission, forfeited its right to exist, cannot be ignored, and the assets, which have been seized by the court, must be distributed among the creditors (in the absence of statutory directions) according to the principles of equity. The receiver, who is the representative of creditors, whose claims have arisen since the execution of the mortgage, and when there were but two shareholders, does not insist, and is not in a situation to insist, that the corporation had not a *de facto* existence until it was dissolved by the judgment of the court. In *Castle* v. *Lewis* (78 N. Y. 131), a corporation, organized under the Manufacturing Act, had a board of three trustees, one of whom resigned. Afterwards the two remaining trustees sent some of the goods of the corporation to a firm for sale on commission, but soon after assigned those unsold and the proceeds of those sold as security for money borrowed by them for the corporation. Other creditors attached the goods and proceeds of goods sold in the hands of the commission house, and a litigation ensued which involved the validity of the transfer. The learned judge who delivered the opinion of the court, in stating the position of the attaching creditors, said: "The defendants claim that the sale made by the corporation was void for want of authority, inasmuch as the statute in regard to manufacturing corporations requires that there shall not be less than three trustees and three stockholders; and as there were only two the corporation could not pledge the property." It was urged that the powers of the corporation had become dormant and could not be exercised so long as it had less trustees than it was required by the statute to have. The contentions of the attaching creditors were not sustained,

and the assignment by way of security made by the two trustees was held to be valid. (*Atlas Nat. Bk.* v. *F. B. G. Co.*, 8 Biss. 537; *Russell* v. *M'Lellan*, 14 Pick. 63; Morawetz on Corp. § 1002.) . The mortgage was not invalid as to subsequent creditors by reason of there being but two persons legally qualified to act as trustees when its execution was directed.

It is a general rule that a director, trustee or an executive officer of a corporation is without power to bind it or its shareholders by a contract authorized by or entered into with himself and for his individual benefit. But if the contract so entered into is in all respects just as between the parties, and all of the shareholders and directors or trustees are competent to assent, and with full knowledge of the terms of the contract, do assent and direct that it be made, it is binding on the corporation and cannot be avoided by its shareholders or by persons who subsequently become its creditors.

Upon an examination of the account between Woodruff and the corporation, the referee found that at the date of the last mortgage the mortgagor owed the mortgagee $33,997.40, and that interest amounting to $13,268.13 had accumulated, making $47,265.53 due thereon at the date of his report. The Special Term held that there was due thereon $3,111.88 more than was found due by the referee, making a total of $50,377.41, which was affirmed by the General Term. These conclusions are drawn from evidence quite capable of sustaining different inferences, but there being some evidence to sustain the facts found, this court will not overturn them. It should be observed, however, that when the mortgage was assigned Woodruff certified in writing that it was given to secure the payment of a lawful indebtedness from the corporation to him for the full amount secured thereby which was contracted in the business of the corporation, and at the same time he, as president of the corporation, certified that the security was good and valid in all respects, and it was found by the referee and confirmed by the court that Hulbert believed these representations and advanced money on the

faith of them. The state of accounts between the mortgagor and the mortgagee, created after the assignment of the security, can have no effect upon the rights of the respondents.

The written assent of all of the shareholders having been duly signed one day before the mortgage was executed, it was, as between the assignee of the mortgage and the receiver, a sufficient compliance with the statute to file the assent simultaneously with the filing of the mortgage for record. (*Rochester Savings Bank* v. *Averell*, 96 N. Y. 467.)

The sum ($9,277.53) directed to be paid to Hulbert individually was in satisfaction of a debt incurred by Woodruff to H. C. Hulbert & Co., but it is found that before it arose Hulbert guaranteed to his firm the payment of all sums for which Woodruff might thereafter become indebted to it; and that November 6, 1885, the firm's interest in the demand was assigned to Hulbert. The receiver insists that this demand is not embraced within those secured by the assignment dated August 27, 1879; but this contention cannot be sustained, for the mortgage was assigned as security for all claims "which he (Hulbert) now holds, or which he may hereafter acquire by any means."

Not finding that the part of the order appealed from violates any rule of law or equity applicable to the distribution of the award, it should be affirmed, with costs.

All concur except BRADLEY and HAIGHT, JJ., not sitting.

Order affirmed.