THE GREENPOINT SUGAR COMPANY, Respondent, *v.* HENRY WHITIN, impleaded, etc., Appellant.

The provision of the statute of 1864 (chap. 517, Laws of 1864), amending the general manufacturing act (chap. 40, Laws of 1848), which authorizes any corporation, organized under said act, to mortgage its real estate to secure antecedent debts, provided the written assent of stockholders, owning two-thirds of its stock, shall first be filed, was intended simply to protect the stockholders from improvident or corrupt acts of the officers of the corporation; it was not enacted because the mortgaging of corporate property was regarded as improper, *per se.*

In the absence of fraud, or of any objection upon the part of the stockholders, a defect in an assent, to invalidate a mortgage given under it, must be of so substantial and radical a character that an intention to consent cannot be inferred from the instrument.

A writing was filed, signed by the requisite number of the stockholders of the K. C. M. Co., consenting that said corporation execute a bond, without specifying the amount, to the plaintiff, and a mortgage to secure the same upon lands of the corporation situate in the city of B.; no lands were particularly described. *Held,* that this was a sufficient assent to authorize a mortgage to secure any debt contracted by the K. C. M. Co., in the business for which it was incorporated, which it then owed the plaintiff; also *held,* that if the instrument itself was defective, it was competent to connect it with the subject matter by parol evidence, and to prove the debt then owing to plaintiff, and the amount of it.

The assent filed was dated October 21st, 1869, it was filed November 4th, thereafter; on the same day the premises mortgaged, which previously had been occupied by said company, under a contract of purchase, were deeded to it by plaintiff and the mortgage executed; it did not appear that the company owned any other land in the city of B. *Held,* that the assent was sufficient to validate the mortgage, as the assent, mortgage and deed were substantially one transaction, and as prior to the time the company was equitable owner, having a right as such to mortgage its interest.

As to whether any assent is necessary under said statute, where a mortgage is given for the purchase money of the mortgaged premises, or for a debt in the nature of purchase money, *quære.*

*Semble,* whether any person, who is not a stockholder, can interpose the objection of want of a sufficient assent.

It was admitted that the assent was filed November 4th; the mortgage was recorded after 3 P. M., of that day. *Held,* that the fair inference was that the assent was filed at the same time that the mortgage was recorded ; and that such filing was sufficient.

It *seems* that a mortgage, although recorded prior to the filing of an assent, is valid from the time of such filing.

For the purposes of said act, the amount of stock actually issued and owned, is to be regarded as the capital stock ; not the nominal amount specified in the articles of association.

A corporation organized under said act may, upon sale of a portion of its lands to another similar corporation, agree to advance moneys to the latter, to be used in erecting buildings on the premises conveyed.

(Argued April 2, 1877 ; decided April 17, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term. (Reported below, 7 Hun, 44.)

Plaintiff and defendant, the Kings County Manufacturing Company, were both manufacturing corporations, organized under the general act (chap. 40, Laws of 1848.)

The nature of the action and the facts are sufficiently stated in the opinion.

*Samuel Hand,* for the appellant. The mortgage held by plaintiff was void, because the requirements of the statute were not complied with. (Laws 1848, chap. 40, § 2; Laws 1864, chap. 517, § 2.) The assent of the stockholders given was insufficient. (Ex parte Williams, 15 L. T. N. G., 451; 24 and 25 Vict. [Bky. Cts.]; *Dutchess R. R. Co.* v. *Mabbett,* 58 N. Y., 397; 1 Pars. on Con., 399; *Bruce* v. *Pearson,* 3 J. R., 534; *Hutchinson* v. *Bowker,* 5 M. & W., 535; *Brown* v. *N. Y. C. R. R. Co.,* 44 N. Y., 79; *Booth* v. *Pierce,* 38 id., 463; *McCotter* v. *Mayor, etc.,* 37 id., 329; *Abeel* v. *Radcliff,* 13 J. R., 297; *Wright* v. *Weeks,* 25 N. Y., 153; *People* v. *Franklin,* 5 Lans., 129; *Mallory* v. *Radde,* 60 N. Y., 645; *Newell* v. *Wheeler,* 48 id., 486; *Juliand* v. *Rathbone,* 39 id.,

369; *Wright* v. *Briggs*, 2 Hill, 77; *Haswell* v. *Goodchild*, 17 Wend., 376.) Defects in the written assent could not be supplied by parol evidence. (25 N. Y., 153; 58 id., 397.) The judgment cannot be sustained on the theory of a vendor's lien. (*Coleman* v. *Second Ave. Co.*, 38 N. Y., 201; *Bailey* v. *Rider*, 10 id., 363; *Rome Ex. Bank* v. *Eames*, 1 Keyes, 588; *Ont. Bank* v. *Root*, 3 Paige, 478; *Dows* v. *Morewood*, 10 Barb., 183; *Hunter* v. *Osterhoudt*, 11 id., 33; *Allen* v. *Culver*, 3 Den., 284; *Seymour* v. *Van Slyck*, 8 Wend., 403; *Fish* v. *Howland*, 1 Paige, 20; *Warner* v. *Van Alstyne*, 3 id., 513; *Coit* v. *Fongera*, 36 Barb., 195; *Shirley* v. *Cong. Ref.*, 2 Edw., 505; *Fisk* v. *Potter*, 2 Abb. [Ct. App. Dec.], 138.) Plaintiff could not loan moneys and take a mortgage as security therefor. (2 R. S., 599, 600, sub. 4, §§ 3, 4; *Ashbury R. Car Co.* v. *Riche* [L. R.], 7 H. of L., 653; *Hawks* v. *East. Co. R.*, 5 H. of L. Cas., 331; 6 Hill, 37; *Mabeson P. R. Co.* v. *Watertown P. R. Co.*, 5 Wisc., 173; Laws 1866, chap. 838, § 1.)

*Lucien Birdseye*, for the respondent. Without assent of the stockholders in due form and properly filed, the mortgage assigned to the appellant was void, having been given to secure future advances. (Laws 1848, chap. 40, § 2; Laws 1864, chap. 517, § 2; Laws 1871, chap. 481, § 2.) Defendant had power to give the purchase money mortgage in suit without any assent of its stockholders. (Laws 1864, chap. 517, § 2; *Tibbs* v. *Morris*, 44 Barb., 138; *Dubois* v. *Hall*, 43 Barb., 26.) It was not necessary to state in this mortgage that it was given for part of the purchase money, this could be proved by any competent proof. (*Crippen* v. *Hermance*, 9 Paige, 211; *Dubois* v. *Hall*, 43 Barb., 26; *Burgher* v. *Hughes*, 63 N. Y., 629.) The act of 1864 [chap. 517] permitting the mortgaging of its property by a corporation is to be construed liberally. (*Holmes* v. *Carley*, 31 N. Y., 289; *Chamberlain* v. *West. Trust Co.*, 45 Barb., 218; *Whitney* v. *Un. Tr. Co. of N. Y.*, Com. Apps., 1875, Ms.; *Cent. G. M. Co.* v. *Platt*, 3 Daly, 263; *Barry* v. *Mer. Ex.*

*Co.*, 1 Sandf. Ch., 280; *Curtiss* v. *Leavitt*, 15 N. Y., 62; *King* v. *Mer. Ex. Co.*, 5 id., 547.) The omission to insert in the assent the precise amount for which the bond was to be given did not nullify it. (*Chauncey* v. *Arnold*, 24 N. Y., 330; Anst., 228, 4 T. R., 320; *Woolley* v. *Constant*, 4 J. R., 60; *ex parte Decker*, 6 Cow., 60; *Knapp* v. *Maltby*, 13 Wend., 587.) It was proper to prove by parol the nature and qualties of the subject to which the bond referred. (Greenl. on Ev. [13th ed.], §§ 286–291, 295*a*, 297–301; *Cary* v. *Thompson*, 1 Daly, 35; *Galen* v. *Brown*, 22 N. Y., 37; *Fish* v. *Hubbard*, 21 Wend., 651; *Pritchard* v. *Hicks*, 1 Paige, 270; *Rowe* v. *Thompson*, 15 Abb. Pr., 377; *Tibbs* v. *Morris*, 44 Barb., 138; *McNulty* v. *Prentiss*, 25 id., 204; *Judd* v. *Ensign*, 6 id., 258; *Sale* v. *Darragh*, 2 Hilt., 184; *Boyd* v. *Brotherson*, 10 Wend., 93; *Clute* v. *Small*, 17 id., 238; *Brutt* v. *Picard*, 21 E. C. L. R., 376; *ex parte Hornby*, 2 Bradf., 420; *Kershaw* v. *Cox*, 3 Esp., 246; *Downes* v. *Richardson*, 5 B. & Ald., 674; *Byron* v. *Thompson*, 3 P. & D., 71; *Jacobs* v. *Hart*, 6 M. & S., 142; *Com. Bk.* v. *Kortright*, 22 Wend., 348; *Smith* v. *Crooker*, 5 Mass., 538; *Price* v. *Page*, 4 Ves., 679; *Parsons* v. *Parsons*, 1 Ves., 266; *Careless* v. *Careless*, 19 id., 601; *Smith* v. *Coney*, 6 id., 42; *Jones* v. *Newman*, 2 W. Blk.    ; *Colpoys* v. *Colpoys*, 4 Eng. Ch., 451; *Moseley* v. *Martin*, 37 Ala., 216; *Mech. Bk.* v. *Bk. of Columbia*, 5 Wheat., 326; *Hunt* v. *Adams*, 6 Mass., 519; *Curtis* v. *Hitchcock*, 10 Paige, 399; *Blossom* v. *Griffin*, 11 N. Y., 509; *Griffiths* v. *Hardenberg*, 41 id., 464; *Almgren* v. *Dutilh*, 5 id., 28; *Sergeant* v. *Adams*, 3 Gray, 72; *Collender* v. *Dinsmore*, 55 N. Y., 200; *Fish* v. *Hubbard*, 21 Wend., 651, 654.) The stockholders' assent being filed on the same day the mortgage was recorded, was filed in time. *Palmer* v. *Yates*, 3 Sandf., S. C., 137, 147.

CHURCH, Ch. J. This is an action to foreclose two mortgages executed by the Kings County Manufacturing Company to the plaintiff; one dated November 4, 1869, for $44,244.24, and the other dated February 10, 1872, for $7,407.

The principal questions arise in respect to the former. The defendant Whitin, as assignee and owner of a subsequent mortgage, claims that the large mortgage was unauthorized, and is invalid for the want of a sufficient assent in writing by the stockholders owning two-thirds of the amount of stock in the corporation. The manufacturing act of 1848 (chap. 40, § 2), conferred unlimited power upon corporations to be created, to purchase, hold and convey real estate, but prohibited mortgaging or creating a lien. This provision was modified by chap. 517 of the Laws of 1864 (§ 2), as follows:

" § 2. Any corporation formed under the said act passed February 17th, 1848, * * * may secure the payment of any debt heretofore contracted or which may be contracted by it in the business for which it was incorporated, by mortgaging all or any part of the real estate of such corporation; and every mortgage so made shall be as valid to all intents and purposes as if executed by an individual owning such real estate; provided, that the written assent of the stockholders owning at least two-thirds of the capital stock of such corporation shall first be filed in the office of the clerk of the county where the mortgaged property is situated."

The written assent made and filed in this case was as follows: " Know all men by these presents, that we, the undersigned, stockholders of the Kings County Manufacturing Company, and owning more than two-thirds of the capital stock of the said company, do hereby severally consent that the said Kings County Manufacturing Company execute to the Greenpoint Sugar Company a bond conditioned for the payment of ——, and a mortgage to secure the same upon the lands and premises · by them owned, situate in the city of Brooklyn, county of Kings, in the State of New York, or any part thereof."

It is objected: First, that the consent is too indefinite, especially in not specifying the amount of the mortgage.

Second. That the lands are not specified, and that the property mortgaged was not, at the time of signing the consent, *owned* by the company.

Third. That stockholders owning two-thirds in amount of the capital stock did not execute the paper.

Fourth. That it was not filed before the mortgage was made or recorded.

It is quite manifest that the prohibition in the act of 1848 against mortgaging corporate property, and the qualifications in the act of 1864 to the right of mortgaging, were enacted for the benefit and protection of the stockholders. While unlimited power to purchase and convey real estate was conferred upon corporations authorized to be created, they were prohibited from creating liens whereby preferences might be given to creditors through favoritism of the officers or other improper motive. In general, the right to mortgage inheres in the ownership of property as much as the right of other disposition; but it is competent in the case of corporations to restrict their powers and regulate their exercise in such manner as public policy and the interests of those investing their means in these artificial organizations may dictate.

The act of 1864 removed the restriction substantially imposed by the previous statute, with a proviso requiring only that those interested — the stockholders — should consent, thus plainly evincing that the purpose and intent was to protect the stockholders from improvident or corrupt acts of the officers of the company. There is nothing showing that the legislative policy regarded the mortgaging of corporate property improper *per se*, but the policy adopted indicates a fear of its improper exercise, and an intention to guard against it.

Without considering the question whether any but stockholders may interpose the objection to the authority exercised in this case, the inference that the general purpose and design of the act was in the interest of stockholders only has some bearing upon the question presented as to the proper rule of construction to be adopted of the paper produced as an assent of the stockholders. The officers of a corporation are the agents of the stockholders who occupy,

in some respects, the character and position of principals, and this relation is recognized in the act in question, permitting the mortgaging of corporate property. The officers were prohibited from mortgaging, but may do it with the consent of the stockholders. The act of mortgaging is not deemed illegal, but the principal must assent in writing, and to make the provision of practical value the difficulty of procuring the assent of every stockholder was avoided by permitting the owners of two-thirds to assent.

It is important to observe that the statute does not prescribe any particular form of assent, nor what it shall specify or contain. It only requires an assent in writing to securing a debt by mortgage. The statute should receive a practical and not a technical construction, and especially in the absence of fraud, and in the absence of any objection on the part of those for whose benefit the proviso was inserted, we are not called upon to exercise great astuteness in discovering defects which are not of such a substantial and radical character as to render the assent ineffective for the purpose designed.

The Kings County Manufacturing Company did execute a mortgage to the plaintiff for $44,244.24, to secure a balance of indebtedness due for the purchase price of real estate, and for advances made for erecting the buildings of the company. It is not denied that the debt was one which the statute authorized to be secured, and the evidence and findings show it to have been of the most meritorious character, and entitled, above ordinary debts, to a preference. It is clear that the stockholders did consent to the execution of a mortgage to plaintiff, and the question is whether the paper referred to, either expressly or by legal intendment is sufficient to manifest a consent to this mortgage. The paper in express and unambiguous language authorizes the giving of a bond to the plaintiff (without specifying the amount), and a mortgage to secure that bond, upon certain property. Regarding this as authority from principal to agent, taken in connection with the act of 1864, I think it sufficient to

authorize a mortgage to secure any debt of the character specified in the act of 1864, which the manufacturing corporation then owed the plaintiff. It is unnecessary to specify the amount of the debt, or the character of it. It is conceded that if the paper had authorized the payment of any debt owing to the plaintiff, it would, in this respect, have been sufficient. The authority was unlimited as to the amount, and therefore it authorized securing any amount which the act authorized to be secured. This, it seems to me, is its legal effect, and it is as effectual as if it had specified the indebtedness or referred to the debt, as one owing to the plaintiff. No statute authority was requisite to the giving of the bond. The stockholders expressly authorized a bond to be given, and as the amount was not restricted, I think upon recognized principles in analogous cases, that the authority was ample to execute the bond in question. The stockholders, themselves, would not, in the absence of fraud, be heard to deny this authority. It would not, of course, authorize a bond for a sum not owing, or for a debt not authorized to be secured by mortgage, but within this limitation it would authorize a bond for any amount.

If the position of the learned counsel for the appellant is correct, not only must the particular sum be named, but the date and terms of the mortgage must be specified, a construction which would practically destroy the value of the provision. The defendant could not have been misled. The consent in this case was ample to put him upon inquiry. If he examined the files, he was informed that the stockholders had authorized a mortgage to secure a bond for an amount limited only by the amount of the debt actually existing of a specified nature, and the mortgage on record informed him of the extent to which the authority had been exercised. He seeks to gain a preference not by objecting either that the amount of the debt or its nature was not correct and legitimate, nor claiming that he was in manner deceived or misled, but by criticising the form in which those interested saw fit to express their assent. Assuming his right to object,

we think the defects must be so radical that an intention to consent cannot be inferred.

But if the papers themselves are defective, it was competent by parol evidence to connect the instrument with the subject matter. It was competent to prove the debt owing to the plaintiff and the amount of it. This gives force and application to the authority to give a bond, and the mortgage referred to the bond. In the construction of wills or any written instrument, it is competent to prove by extrinsic evidence the facts surrounding the testator or parties, so that the court may see what they saw, and know what they knew, not to vary or alter the writing, but to give it effect and carry it out according to its intent, and when it is apparent upon the face of the instrument that something is contemplated and agreed upon by the parties, which they have not distinctly defined or expressed with sufficient clearness, parol proof connecting the instrument with the subject matter is allowable. (21 Wend., 651, and cases there cited; 1 Ad. & Ellis, 57; Greenleaf on Ev., § 297-8-9; 2 Hilt., 184.)

The bond was intended to be given for some amount and for some debt, and with the extrinsic facts before us it must be presumed to have been authorized for the debt and amount actually owing. There is no such patent ambiguity as cannot be explained by parol. The purpose and intent of the instrument was plainly enough expressed, which was to authorize a bond and secure it by a mortgage to the plaintiff; but whether this was to be done to secure a stock speculation or a gambling debt, or a legitimate debt, is made clear by the facts proved. The court, occupying the position of the stockholders, can apply the terms of the instrument to the subject matter. In any view, I have no doubt but the written assent produced in this case was a sufficient compliance with the statute.

It is also objected that the assent is not sufficient because the manufacturing company did not "own" the real estate mortgaged at the time it was signed. It does not appear exactly when the assent was signed. It is dated October

21st, and was probably signed between that and the 4th November, when the assent was filed and the mortgage was given. The manufacturing company occupied the premises under a contract of purchase from the plaintiff until the 4th November, when a deed was taken and the mortgage given. The answer to this objection, in the first place, is, that the company was the owner in equity before the deed was given, and it does not appear that it owned any other land in Brooklyn at the time. As such owner, it had a right to mortgage or sell its interest, and the presumption is that the consent referred to this property. Again, it is quite evident that the deed, mortgage and consent were substantially one transaction. The consent, deed and mortgage were given in pursuance of the general arrangement between the parties to take the title, settle their accounts and secure the balance due the plaintiff. Besides, if the mortgage was given for the purchase money or a debt in the nature of purchase money, I am not prepared to affirm that any assent was necessary. By the act of 1848, corporations have unlimited power to purchase real estate, and a deed and mortgage executed and delivered simultaneously are regarded as one instrument, and construed as a conveyance upon condition of payment expressed in the mortgage (59 N. Y., 541.) If so, it is plausibly at least argued that no assent was necessary, and that neither the prohibition in the act of 1848, nor the proviso in the act of 1864, has any application, but it is not needful to pass upon this question.

The point made by the counsel for the appellant as to filing, is that the assent must be filed before the mortgage is made. The fact is so found by the judge at Special Term, and the evidence warranted such an inference. It was executed prior to the 4th day of November, and the filing is on that day, without specifying the hour, while the mortgage was not recorded until after three o'clock in the afternoon. If necessary to sustain the validity of the transaction, an inference is warranted that the paper was filed at some previous hour. Looking at the evidence, the probability is

that the assent executed previously was filed at the same time the mortgage was recorded, and such filing was in my judgment a sufficient compliance with the statute. The reasonable construction of the statute is, that the mortgage is valid from the filing of the assent. It provides in substance that any mortgage authorized by the act shall be as valid as if executed by an individual, provided that the assent is first filed, etc. The validity of the mortgage is made to depend upon the filing of the assent, and it follows that from the time of filing the mortgage is valid. It is unnecessary to go to that extent, but I have no doubt that a filing at the time of recording the mortgage, which is the final step in perfecting the security, is sufficient substantially, if not literally. The Revised Statutes forbid a conveyance, assignment or transfer by a bank of any of its effects, unless authorized by a *previous resolution* of its board of directors; and it was held in 2 Sand. R. (137), DUER, J., writing the opinion, that a subsequent resolution was equal to an original authority, but added: " It is sufficient to say that the assignment is valid from the time that the sanction of the board has been given to it, and we are quite certain that in saying this, although we may not follow the words of the statute in their literal sense, we fully satisfy their meaning and policy."

It remains to consider the question whether the owners of two-thirds of the capital stock signed the assent. It is claimed that one of the signers, Furbish, was not the owner of 109 of the shares which he represented, and that these shares were necessary to make two-thirds. It seems that Furbish was credited on the stock ledger with these 109 shares and a certificate made with the seal of the company, and in all respects perfect except the signature of the president. Without stopping to inquire whether Furbish might properly be considered the owner of these shares, the answer to the point is that the owners of two-thirds of the stock were represented without including them. The capital stock fixed in the articles of association was 2,500 shares, but there had been only 2,000 shares actually issued, and only that

number were then owned, and for aught that appears no more was intended to be issued. The owners of more than two-thirds of that number signed the assent, without including the 109 shares. For the purposes of this act we think that the amount actually issued and owned should be regarded as the amount of the capital stock. The design was to confer this power of assent upon those who represented two-thirds of the actual stock. They ·represented two-thirds of the pecuniary interest and property of the corporation. Otherwise it might happen that there would not be a sufficient ownership of stock to enable the company to execute a mortgage at all.

The point that the advances were unauthorized and therefore *ultra vires*, appears upon the brief of the appellant's counsel, but was not urged upon the argument, and cannot be sustained.

The only question made as to the smaller mortgage was as to the time of filing the consent, and that is disposed of by the views previously expressed, in respect to the filing of the consent for the larger mortgage.

The judgment must be affirmed.

All concur, ALLEN, J., concurring in result; MILLER, J., taking no part; EARL, J., absent.

Judgment affirmed.