Adams, J.
The plaintiffs as judgment creditors of the Rheubottom and Teall Manufacturing Company, bring this action for the purpose of having declared fraudulent and void, as against their judgments, certain real estate and chattel mortgages executed by the above named judgment debtor to the defendant Jones, and also a certain judgment obtained by the defendants Rheubottom and Wright, and by them assigned to the defendants the National Bank of Auburn and the State Bank of Syracuse. The complaint in setting forth the facts upon which the plaintiffs rely to obtain the relief sought, does not attempt to number and state separate causes of action, but it nevertheless proceeds upon the theory that the Jones mortgages are void, for the reason that they wrere given in contemplation of insolvency when the mortgagor was actually insolvent and without the written assent of a majority of the stockholders of the mortgagor, nor of the stockholders owming two-thirds of the capital stock of said mortgagor, corporation having been first obtained; and that the Rheubottom and Wright judgments were suffered and procured by fraud and collusion, to which latter transaction it is not pretended that the defendant Jones was in any sense a party. It would seem therefore that the complaint does contain separate and distinct causes of action, upon either one of which plaintiff might recover as against some of the defendants, and it follows that a demurrer may be interposed to each of these causes of action, although they are both stated in one count. Wiles et al. v. Suydam, 64 N. Y. 173 ; Goldberg v. Utley, 60 N. Y. 427.
The portion of the complaint demurred to is that which alleges that the Jones mortgages were obtained without procuring the written assent, of the requisite number of stockholders, and seeks by reason thereof, to have the same declared void as against the plaintiff’s judgments, the defendant insisting that this statutory pre-requisite is one which concerns the stockholders only, and that the plaintiffs as judgment creditors, can take no advantage of its omission.
The question which is thus presented is one which has been several times incidentally considered by the courts of this state, but no adjudication has been cited, and I am unable to find one in which it has been actually and definitely determined. It may be profitable therefore to briefly consider the several statutory provisions which are designed to restrain and regulate the mortgaging of the real and personal property of corporations, and then to give proper construction to the same with the aid of such interpretations as the courts have intimated ought to be applied.
At common law, any corporation, unless restrained by some *39 provision of its charter, was permitted to mortgage property payment of its debts or to secure money borrowed for business purposes, De Ruyter v. St. Peter's Ch., 3 N. Y., 238 ; Curtis v. Leavitt, 15 N. Y., 9, but this right was curtailed by the general act “ to authorize the formation of corporations for manufacturing, mining, mechanical or chemical purposes,” which provides that any corporation formed under that act shall be capable in law of holding and conveying any real or personal estate, which may be necessary to enable it to carry on its business, “ but shall not mortgage the same nor give a lien thereon." Laws 1848, chap. 40 § 2.
This prohibition was modified, however, in 1864 by permitting a corporation to mortgage any or all of its real estate to secure the payment of any debt contracted by it. Laws 1864, chap. 517, § 2. In 1871, it was still further relaxed by extending the privilege so as to include personal property, Laws 1871, chap. 481, and again in 1878, so as to embrace its “ franchises, rights and liberties.” Laws 1878, chap. 163. But to each of these enabling acts is attached the proviso that the written assent of the stockholders owning at least two-thirds of the capital stock of such corporation shall be first filed in the office of the clerk of the county where the mortgaged property is situated, although this condition was so far modified in 1875, as to permit the certificate of assent to be filed nunc pro tunc in any case where, by accident, or mistake, it has been omitted. Laws of 1875, chap. 88. It appears, therefore, that while the tendency of legislation upon this subject has been constantly in the direction of affording greater liberty and better opportunities to corporations in the conduct of their business and in the management of their affairs, the legislature has in all of these changes and modifications attempted to guard and protect such persons as may be affected thereby, and the question now presents itself, who are the persons for whose interests so much consideration has been shown, are they the corporators or the creditors? It will not be claimed, I assume, that the inhibitory feature which was embraced in the original act was designed to benefit any one but the members of the corporation themselves, and it appears equally certain that its modification was due to the requirements of business which demanded that artificial persons should to a certain extent, be placed upon the same plane as natural ones, and to that end, that they should be permitted to secure their debts and even to borrow money, in like manner as individuals. But yet some restriction was necessary. A corporation organized under this act was a creature of the state, and therefore the state owed to the individual stockholders the duty of affording them adequate protection, consequently it enlarged the powers of the aggregation, but upon condition only that the majority of those interested in availing themselves of the privilege thus offered, should assent in writing thereto; or in other words, it inhibited any officer or officers of the corporation from incumbering its property, until a certain proportion of the members thereof had formally certified that such a course was satisfactory. This, then, is clearly a provision designated for *40 the protection oí the stockholders, instead of the creditors of a corporation, and if so, then it is difficult to see what interest the latter have in insisting upon its observance. It is undoubtedly true that a mortgage of the real or personal property of a corporation, executed by its officers, without first obtaining and filing the statutory consent of the requisite number of stockholders, is, in a certain sense void, because it fails to comply with the requirements of the statute, but it has been held, and it seems to me very properly, that where it is the manifest intention of the legislature to give protection to determinate individuals, the purpose is sufficiently accomplished, if those individuals are afforded the liberty of avoiding the inhibited act. Rex v. Hipswell, 8 B. & C., 466 ; Terrell v. Anchener, 14 Ohio (N. S.), 80 ; Beecher v M. & P. R. M. Co., 23 Alb. Law Journal, 316. Applying the rule thus stated to this case, it follows that if a corporation mortgrge its property in contravention of the provisions of the statute, the individual for whose protection those provisions were enacted may avoid the mortgage, but they may also treat it as a valid security, and if they elect to pursue the latter course, what right has a creditor to complain ? This view of the matter is not without-considerable authority in the way of dicta although as before stated, it has not as yet been formulated into an express adjudication. In the case of Greenpoint Sugar Co. v. Whitin, 69 N. Y., 328, 333, Church C. J., says, “It is quite manifest that the prohibition of the act of 1848 against mortgaging corporate property and the qualifications in the act of 1864 to the right of mortgaging were enacted for the benefit and protection of the stockholders.” This case has been repeatedly cited with approval of the expression quoted and in Paulding v. The Chrome Steel Co., 94 N. Y., 334-341, Danforth J. says, that the statutory assent “ has been considered by us as enacted for the benefit and protection of stockholders against improvident or corrupt acts of the officers of the corporation and not because the legislature regarded the mortgaging of corporate property as improper per se and it is at least doubtful whether any but stockholders can complain that the condition was not complied with.”
Again Judge Andrews in the the case of Rochester Savings Bank v. Averell et al., 96 N. Y., 467, while stating that the assent of stockholders “is an indispensable condition to the creation of a valid mortgage under the act of 1864, takes occasion to add that “ the object of the legislature in requiring such assent, was the protection of stockholders against improvident collusive acts of the trustees, the governing body of the corporation, in incumbering the corporate property.” This case is cited by the learned counsel for the plaintiff as an authority against the contention that none but stockholders can avail themselves of this privilege, inasmuch as the question was there raised by subsequent lienors for the purpose of defeating the plaintiff’s mortage. It is true that the defendants were purchasers under a second morgtage foreclosure, but it appears that they were also stockholders in the corporation which executed the mortgage and were therefore in a position to raise the question. Still more recently the dictum of *41 Judge Church in the Whitin case, has been referred to with apparent approval of the principle therein contained, as for instance he is quoted by Batallo J. with the supplementary suggestion that the legislative enactments plainly evince that their purpose and intent were to “ protect the stockholders from improvident or corrupt acts by the officers of the company ’’ and that “ the policy adopted indicates a fear of its improper exercise (i„ e. the mortgaging of corporate property) and an intention to guard against it.” Lord v. Yonkers Fuel Gas Co. et al., 99 N. Y., 547, 555, and in the case of Welch v. Importer & Traders Nat. Bank et al., 122 N. Y. 177, 187 ; 33 St. Rep. 452, Follett C. J. in giving construction to the act of 1864, and its amendments says, ” the enabling part of this section was enacted to relieve corporations from the prohibition against mortgaging their property, contained in the second section of chapter 40 of the laws 1848, and the proviso in respect to the assent of shareholders is for their protection.” It is impossible to read what has thus been quoted from cases decided by the court of appeals without receiving the impression that the view urged by counsel for defendant Jones upon the argument of this demurrer, is the one which must receive authoritative sanction from that tribunal whenever it shall be called upon to meet the question here presented, and so strong is that impression that I should be compelled to adopt that view even if it were not in consonance with my own judgment which, it is proper to add, is not the case. The single instance in which a different view appears to obtain is in the decision of Rochester Savings Bank v. Averill, at the general term, 26 Hun, 646, where Hardin J. says, “The purpose of the statute was to protect stockholders of the company and Iona fide creditors,” and in support of this expression of opinion the learned justice cites the case of Beecher v. M. & P. R. M. Co., supra, and Post v. Dart, 8 Paige 639. It has already been shown and a careful reading of Judge Cooly’s opinion in the former case, will make it very clear, that so far from that being an authority for the proposition that protection to creditors was within the contemplation of the legislature when the statutes in question were enacted, it holds in so many words, that a statute somewhat similar in its provisions, was designed for the protection of stockholders only; while the case Post v. Dart, simply decides that a stranger can not insist upon the invalidity of a usurious mortgage in respect of which he is neither a party or a privy, which is a principle quite in harmony with the defendant’s contention in this case.
But, it is argued, the amendments to the act of 1848, merely permit the giving of a mortgage on corporate property, provided certain things be done and that if they are not done the original act applies with its prohibition. This however, is not my understanding of the intention of the legislature as expressed by the various amendments to which reference has been made and as the same has been construed by the courts. On the contrary its policy seems to be to recede from the inhibitory feature of the original act and to declare that the mortgaging of corporate property is not improper per se so long as the individual members of *42 the body are protected from any improvidence or corruption on the part of their officers.
The views which I entertain and which are here expressed, lead to a conclusion which sustains the demurrer and make the consideration of the other questions discussed, unnecessary.
The demurrer is therefore sustained with costs to the defendant Jones to abide the result of the trial of the issues of fact raised by the answer to the original complaint.