# THE

# New York Supplement

## VOLUME 35.

(13 Misc. Rep. 737.)

### BEEBE v. RICHMOND LIGHT, HEAT & POWER CO. et al.

(Supreme Court, Special Term, Richmond County. August 12, 1895.)

1. MORTGAGES — TO TRUSTEE — FORECLOSURE BY BONDHOLDER — REFUSAL OF TRUSTEE TO ACT.

   A bondholder secured by mortgage cannot foreclose as for refusal of the trustee to act, where, on the bondholder proposing that he himself foreclose, the trustee stated that he was ready to foreclose on certain security being given him, some of which he was entitled to, and the bondholder treated his entire demand as illegal.

2. SAME—DELAY OF TRUSTEE TO FORECLOSE.

   A bondholder is not entitled to foreclose a mortgage by which he is secured, merely because of delay of the trustee, no request having been made to the trustee to foreclose.

3. SAME—LIEN—AFTER-ACQUIRED PERSONALTY.

   A mortgage purporting to cover all personalty thereafter to be acquired by the mortgagor has no effect as to such property against creditors of the mortgagor, unless after its acquisition, and before they obtain a lien thereon, he gives the mortgagee a lien thereon.

4. SAME—LIEN—NOTICE.

   A mortgage covering realty and personalty, though not filed, is a lien on personalty prior to that of a judgment of a creditor of the mortgagor, who had notice of it.

5. SAME—OF CORPORATION'S FRANCHISE.

   A corporation cannot, without statutory permission, mortgage its franchise.

6. SAME—TO SECURE CORPORATION'S BONDS.

   Acts 1875, c. 611, § 13, as amended by Laws 1888, c. 394, authorizing a corporation organized thereunder to issue bonds, not exceeding half its corporate property, and secure them by mortgage on its real estate, does not render the mortgage void, in whole or in part, in case of overissue, but merely makes the directors liable for any damages by reason thereof.

7. SAME—BY CORPORATION—ASSENT OF STOCKHOLDERS.

   Objection that the written assent of stockholders, owning over two-thirds of the stock, to the giving of a mortgage on the corporation's realty (required by Act 1875, c. 611, § 13, as amended by Laws 1888, c. 394), was not obtained, can be made by any one interested in defeating the mortgage.

8. SAME—WRITTEN ASSENT.

   A resolution passed at a stockholders' meeting by vote of stockholders owning more than two-thirds of the stock, and entered on the minutes and attested by the secretary, is a "written assent" within the statute.

v.35N.Y.S.no.1—1

**9. SAME—DISCHARGE OF LIEN.**

    A purchaser of the property of the R. Company, subject to a mortgage to secure its bonds, transferred it to the E. Company, in payment of part of his subscription to the stock of the E. Company, with an agreement by the latter company to accept any of the outstanding bonds in further payment of the subscription, and cancel the bonds as received. *Held*, that bonds accepted under the agreement by the receiver thereafter appointed of the E. Company cannot participate in the benefits of the mortgage, but must be canceled.

Action by Albert O. Beebe against the Richmond Light, Heat & Power Company and others to foreclose a mortgage given on real and personal property and a corporate franchise, by a business corporation organized under Laws 1875, c. 611.

George A. Black, for plaintiff.

Henry H. B. Stapler, George M. Van Hoesen, and Albert Reynaud, for defendants.

GAYNOR, J. On November 22d the plaintiff wrote to the Holland Trust Company, the mortgage trustee, that he owned a majority of the bonds, and that he desired "to ask the proper court to foreclose and sell the property"; and asked "what action" the trustee would take. He added that he had attorneys familiar with the facts and ready to proceed, who would arrange for the trustee's protection "in any manner that may be necessary." This letter was not a request that the trustee foreclose, but rather the expression of a desire of the plaintiff to do so through his own attorneys. The trustee answered, on the same day, that before it could take any action it would have to be "properly indemnified against costs and disbursements for bringing a suit," that plaintiff would have to deposit his entire holdings of bonds, and that when those conditions were complied with it would proceed. This was a statement that it would bring the action upon compliance with the conditions named. The plaintiff responded next day that the proposition he had made was that he foreclose the mortgage, thus removing any doubt as to that, if his first letter was susceptible of any. He added that he had never before been required by trust companies to deposit bonds in order to "secure their action in caring for the trust," and that he would deposit the bonds with the court. He then added that "the conditions you require before proceeding we understand to be a refusal on your part to act under the trust on the terms made Nov. 22." The terms of his letter of November 22d, to which the plaintiff thus referred back, were that the plaintiff foreclose. There is not in these letters of the plaintiff a demand, or even a request, that the trustee bring an action of foreclosure, but the contrary suggestion that the plaintiff be allowed to do so upon arranging for the protection of the trustee. The trustee responded to the plaintiff's second letter on November 23d, notifying the plaintiff that it was able and willing to bring the action forthwith, but that it had a right to the indemnity, which it again demanded. It said nothing in this final letter of the deposit of the bonds. The plaintiff made no response, but stood on his last letter, and brought this action to foreclose, making the trustee a defendant. By the terms of the trust mort-

gage the trustee had the right to demand indemnification against costs and disbursements before beginning the action. It demanded, in addition, that the plaintiff's bonds be deposited, presumably with it. If this meant a permanent deposit, it had no right to make it, but it did have the right to have the plaintiff submit his bonds for its inspection, to see that he was a bondholder. But in response the plaintiff coupled both demands, and treated both as illegal, and as amounting to a refusal by the trustee, not to bring the action, but to do as requested in his previous letter. The trustee, in its final letter, stood only upon the demand for indemnity. It was incumbent on the plaintiff to offer such indemnity. But he evidently did not want the trustee to bring the action, but wanted to bring it himself, and he never made an unequivocal request that the trustee bring it, but put and kept himself at cross-purposes with the trustee. He cannot maintain his position as plaintiff on the ground that the trustee refused to bring the action. Nor did the failure of the trustee to foreclose for so long a time after default of the bonds give a bondholder the right to bring an action to foreclose on the ground of abandonment or neglect of the trust. The relation between a mortgage trustee and the bondholders does not impose upon the trustee the duty in every case of a prompt foreclosure without any request from a bondholder. On the contrary, the relation is one principally of convenience to the bondholders, who are the real parties in interest, and the usual course is for the trustee to await a request from them for a foreclosure. In most cases a prompt foreclosure is neither desired by the bondholders, nor desirable for their interests. I therefore give judgment of foreclosure upon the prayer of the trustee, and not upon that of the plaintiff, and will adjust costs upon the presentation of the judgment. The court having jurisdiction of the case and control of the trust, it is not vital upon whose motion it acts.

It remains to state how I have disposed of certain other questions, upon which depend the limits and extent of the judgment to be entered.

1. So far as the land covered by the mortgage is concerned, it is enough to say that it embraces everything which has become a part of it up to date.

2. So far as personal property is concerned, none will be covered by the decree, or sold thereunder, except that which existed when the mortgage was made. It purports to also cover all personal property to be acquired by the mortgagor afterwards. This is to be regarded only as an executory agreement by the mortgagor to do what is competent and necessary to give a lien upon future property as it comes into existence. It has no force against subsequent liens by attachment and execution creditors or mortgagees, unless such lien be actually effected prior to their liens. Distilling Co. v. Rasey, 142 N. Y. 570, 37 N. E. 632. By the sale thereof under the Wiman execution on May 31, 1892, all of the personal property of the mortgagor went clear of the mortgage, except such as was in actual existence at the time it was given, for no lien was ever afterwards perfected

by the mortgagor upon after-acquired personal property. The lien of the mortgage on the said chattel property covered by it, namely, that in existence when it was made, was prior to the lien under the Wiman judgment, even though the mortgage was not filed, for Wiman had notice of it. In respect of additions to the personal property by Wiman after he purchased under his judgment, and by his grantee, the Electric Power Company, of course the mortgage has no reference to that at all, except such of it as by way of repairs, for instance, has become part and parcel of the original articles, and incapable of a separate identification.

3. The mortgage does not cover the franchise of the mortgagor corporation. It could not be mortgaged without statutory permission (Carpenter v. Black Hawk Co., 65 N. Y. 50), and no such permission is given by the statute under which the mortgagor company was organized (Laws 1875, c. 611), or by any other.

4. By the common law, corporations may mortgage their property at will, the same as natural persons. Barry v. Exchange Co., 1 Sandf. Ch. 280; 2 Kent, Comm. 281. Restrictions in this respect are statutory. Section 13 of the said act of 1875 (as amended by chapter 394 of the Laws of 1888) authorized companies formed thereunder to issue bonds and to mortgage their real estate in an amount not to exceed one-half of the entire corporate property. The mortgaging of personal property is not restricted. I do not find that the total of the bonds issued, which is the amount secured by this mortgage, exceeded one-half of the corporate property; but, if it did, the mortgage would not be void either in whole or for the excess. The said section does not contemplate that, but only that the directors shall be personally liable for any damages to bond holders or mortgage holders caused by such overissue, as it provides.

5. The said section also provides that no such mortgage (namely, on the realty, there being no restrictions or conditions in respect of personalty) shall be issued without the written assent of stockholders owning more than two-thirds of the stock shall have been first obtained. It has been suggested by the courts whether the objection that such assent was not obtained may be taken except by the stockholders, for whose benefit the requirement is said to have been imposed (Greenpoint Co. v. Whitin, 69 N. Y. 328; Paulding v. Steel Co., 94 N. Y. 334; Bank v. Averell, 96 N. Y. 473); but since the case of Lord v. Gas Co., 99 N. Y. 547, 2 N. E. 909, it must be deemed settled to the contrary, and that the objection may be taken by any one interested in defeating the mortgage; for there being in that case no stockholders' consent to mortgage the franchise (which the statute applicable to that company permitted to be mortgaged with its other property), but only a consent to mortgage its real and personal property, it was held, on the objection of the company and of its receiver, that the mortgage did not cover the franchise for lack of such consent. The objection by the receiver was not and could not have been taken on behalf of the stockholders, unless it could be taken on behalf of the corporation. High, Rec. § 313, etc.; Curtis v. Leavitt, 15 N. Y. 44. I have in mind the con-

trary decision of a learned judge since made (Bank v. Jones, 7 Misc. Rep. 207, 27 N. Y. Supp. 677), but of course I may not follow it.    I see no actual distinction between a lack of the stockholders' consent to mortgage the franchise, and a lack of such consent to mortgage the other property of a company.    The fact that by the common law the one could not be mortgaged, while the other could, creates no such distinction under a statute providing that both may be mortgaged, but only upon the previous written assent of two-thirds of the stockholders.    But, anyhow, I think the resolution passed at the stockholders' meeting by the vote of stockholders owning more than two-thirds of the stock, and entered upon the minutes and attested by the secretary, amounted to the "written assent" required.    The main object of the statute was to prevent such mortgages being given without the assent of owners of more than two-thirds of the stock.    Such assent is required to be in writing; and in this case it is in the form of a legal and binding resolution adopted by such stockholders, reduced to writing in the regular minute book, and legally attested, so that it is competent written evidence of the fact. The said act of 1875 did not require the assent to be filed, as was the case with companies formed under the business corporation act of 1848, and is now the case with all corporate business companies.

6. The $63,700 of bonds secured by the present mortgage, which were delivered to the receiver of the Electric Power Company by Mr. Wiman, must be canceled.    Wiman had subscribed for 2,480 shares of the stock of the Electric Power Company, of the par value of $248,000.    By the agreement of November 15, 1892, he transferred all of the property of this mortgagor company (the Richmond Light, Heat & Power Co.), which he had purchased under his aforesaid execution sale, to the Electric Power Company, in full payment for 908 shares of his said subscription to its stock; and the said company agreed to accept the whole or any part of the $150,000 of outstanding bonds of the said mortgagor company, secured by the mortgage now being foreclosed, in payment for an equal amount still due on the said subscription for stock, and cancel the said bonds as received.    In this way the property so transferred by Wiman to the said Electric Power Company would be freed from the lien of the said mortgage to the extent of the bonds so delivered up for cancellation.    After the receiver was appointed, Wiman delivered to him and he accepted under the said agreement $63,700 of such bonds. It was to the advantage of his trust that the receiver should receive them.    By receiving them he reduced the lien of the mortgage that much, according to the agreement, and that is all the advantage the agreement entitles him to.    There is no principle of law or equity upon which he may now hold them uncanceled, and share under them in the proceeds of the foreclosure.

Let findings be presented on notice in accordance with the views here expressed.