as the law permits.    A duty to be done forthwith is not an exception to this reasonable rule.    When the court or officer performs the duty within reasonable time after the event upon which it depends occurs, under all the conditions surrounding the case, the command of the law is complied with.    The magistrate in this case had conducted the proceedings to a late hour, and awaited the verdict of the jury beyond the hour when he might properly have adjourned his court until next day, that the jury might be relieved of the case.    He had received the verdict, and made a memorandum thereof on paper.    He was weary, and his eyes were in a bad condition for further night work, and he held the further proceedings in the case until the next morning, when the first thing he did was to adjust the costs and render the judgment, which consisted of the verdict and the costs, and enter it in his docket book;  and the county court erred in reversing the judgment.    The judgment of the county court should be reversed, with costs of this appeal, and the judgment of the justice affirmed.

Judgment of the county court reversed, with costs, and the judgment of the justice court affirmed, with costs.    All concur.

---

### In re WENDLER MACH. CO.

(Supreme Court, Appellate Division, Fourth Department.    February 7, 1896.)

CORPORATIONS—MORTGAGES—WHO MAY QUESTION VALIDITY.

Where application is made by the receiver of a corporation appointed in dissolution proceedings for confirmation of a sale of the property of the corporation, "subject to all legal liens," and creditors oppose the confirmation on the ground that a mortgage was invalid because the consent of the stockholders was not given and filed, as required by law, the receiver must show that the mortgage is a valid lien.

Appeal from special term, Jefferson county.

Proceedings for the voluntary dissolution of the Wendler Machine Company, a corporation.    From an order ratifying and confirming a sale of the real and personal property of the corporation, certain creditors appeal.    Reversed.

The property was struck off to the highest bidder, "subject to all legal liens thereon, for the sum of $125.00."    Notice of the application to confirm the sale was given to the attorney general, and to the attorney for Rogers & Co. and others, creditors, and to Richten and others, stockholders, who were heard in opposition.    The parties opposing the motion raised the preliminary objection that "the order for sale was granted without notice" to them.    That objection was overruled and the order of confirmation was made, after reading the petition and the affidavits of Jones, Van Allen, and B. J. Mullin, verified September 7, 1895.    The petitioner states that he exposed the property of the corporation for sale, "except bonds held by said company and accounts receivable, * * * subject to all legal liens thereon; subject to the approval of the court upon terms of sale," which are stated.    It appears, by the affidavit of the attorney who opposed the motion, that on the 17th day of June, 1895, prior to the close of the hearing of the application to dissolve the company, he filed in the office of the clerk of Jefferson county a notice of appearance for creditors, and also served a copy thereof upon the attorney for the petitioner, and that no notice of the application for an order authorizing the receiver to sell was served upon the attorney so appearing for the creditors.    The affidavit of

Mr. Van Allen, sworn to September 7, 1895, states that he has searched the records of the county clerk's office of Jefferson county, "and has been unable to find any consent of stockholders, or certificate of meeting of stockholders, of said company, to issue any mortgage on said property, filed or recorded." The affidavit of Jones states that he is a stockholder and director of the company, and that the company was organized in September, 1894, "and that $50,000 in bonds were issued by said Wendler Machine Company October 1, 1894, and that a mortgage was executed upon its real estate, and also a chattel mortgage executed upon its personal property to secure the said bonds; that none of the said bonds have been sold by the said company or any of its officers." It appears by his affidavit that the bonds were issued, "and allowed to remain at the First National Bank of Carthage as collateral security for the sum of $24,400, except $9,000, which were turned over to Pat Phillips as security for an indebtedness to him from the company, leaving $41,000 in bonds at said First National Bank of Carthage"; and that the bank "claims to hold said bonds to secure between $28,000 and $30,000." Jones' affidavit further states "that the property sold was, in deponent's judgment, worth $100,000, and ought to sell at forced sale, and deponent believes could be sold, for from $65,000 to $70,000." It appears that in January, 1895, an appraisal of the property of the company was made, in which the total value of it was stated to be $107,000. It appears in the affidavit of B. J. Mullin that he, on several occasions, had conversations with Phillips, the receiver, who stated "that the company was to be reorganized, with C. H. Remington at the head, and that the property was to be sold, and Remington to be the buyer, or do the bidding, and that the Carthage creditors were to be paid in full"; and that the adjournment was had from the 15th of August to the 22d of August on the ground "that said Remington was not quite ready, and asked for postponement for one week." The affidavit further states that the receiver had told the affiant "that the property was worth $75,000," and "receiver also told deponent that he [Phillips] did not want said sale confirmed, and did not think it would be." He also states in his affidavit "that negotiations had been and are pending to reorganize said company, and take said property, and pay the debts, but that sufficient time has not existed since it was known that Remington was not going to complete the arrangements of the purchase of the property to effect such reorganization." In the testimony given by Phillips before Judge Emerson June 18, 1895, he states, viz.: "I think the property will sell for from $60,000 to $70,000. * * * The indebtedness of company amounts to about $70,-000."

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and GREEN, JJ.

W. B. Van Allen, for appellant.
George S. Hooker, for respondent.

HARDIN, P. J. It seems that Rogers & Co., who were creditors of the Wendler Machine Company, made themselves parties to the proceeding; and after becoming such parties to the proceeding, they were entitled to notice of application subsequently made therein. Code Civ. Proc. §§ 2428 and 799. It seems, by the affidavits, that the receiver was interested, as he held some $9,000 of the bonds secured by a mortgage. Although it is stated in the terms of sale, issued by the receiver, that the sale would be made subject to the approval of the court, there is nothing in the terms prescribed by the receiver requiring the purchaser to pay the antecedent liens upon the property; nor does the record before us show any undertaking on the part of the purchaser to pay the antecedent liens. Good faith was due from the receiver to all parties interested in the corporation, and he ought not to be allowed, in any way, by statements or by his conduct, to mis-

lead interested parties to further his own private interests.    He had, undoubtedly, power to contest the bonds and the mortgage.    Vail v. Hamilton, 85 N. Y. 453; Carbon Co. v. McMillin, 119 N. Y. 46, 23 N. E. 530.    However, it is not necessary at this time to determine that the receiver acted in bad faith and in collusion with parties in interest.    It seems to be well settled that the appellate court has power to vacate or reverse an order made to confirm a sale (Syracuse Sav. Bank v. Syracuse, C. & N. Y. R. Co., 88 N. Y. 110), and that an appeal is allowable by creditors who have an interest in the assets affected by the order confirming the sale.

The learned counsel for the respondent, in his points, states that, prior to the execution of the mortgage, "a consent to mortgage was properly executed and acknowledged by the owners of all but twenty of the fifteen hundred shares of the capital stock.    The consent was not filed, however, till after the property of said company was sold by its receiver, in August, 1895.    The mortgage was recorded immediately after its execution, and before the indebtedness of the company to appellants was incurred."    We find in the appeal book no proof of this statement.    We therefore have before us an order which confirms a sale presumptively made subject to the mortgage, without any evidence before the special term that the mortgage for $50,000 was valid. While it does not clearly appear under what statute the corporation was organized, it is inferable from the appeal papers that it was organized under the statutes relating to manufacturing corporations. Therefore, in order to have the mortgage valid it was essential that the stockholders owning two-thirds of the stock of the corporation should have given their consent to the mortgage, and that such consent should be filed in the proper clerk's office.    Vail v. Hamilton, 85 N. Y. 456; Rochester Sav. Bank v. Averill, 96 N. Y. 467, 26 Hun, 643; Martin v. Manufacturing Co., 122 N. Y. 165, 25 N. E. 303.    Manifestly, the object of the legislature in requiring such an assent was the protection of stockholders against improvident, collusive, and unwise acts of trustees in incumbering the corporate property.    Sugar Co. v. Whitin, 69 N. Y. 333.    Although it has been held, as was intimated in Paulding v. Steel Co., 94 N. Y. 334, that none but stockholders can complain that the statutory consent was not given, yet, in the proceedings now brought in review, it appears the creditors appeared in opposition to the motion to confirm; and before their objection to the confirmation was overruled, it was incumbent upon the receiver, who petitioned for confirmation, to furnish evidence that the mortgage lien was valid, as it manifestly would affect the bidders at the sale.    While the order, in some sense, was addressed to the discretion of the court (White v. Coulter, 1 Hun, 357; Kellogg v. Howell, 62 Barb. 280), we think, upon the papers presented in the appeal book, the learned special term judge fell into an error in confirming the sale, and that the order made at special term should be reversed,—without prejudice, however, to a new application, if the petitioners shall be so advised upon additional proofs.

Order reversed, with $10 costs and disbursements, payable out of the fund, without prejudice to a new application.    All concur.