### In re SENTENNE & GREEN CO.

(District Court, E. D. New York. January 17, 1903.)

**1. CHATTEL MORTGAGES—CONSTRUCTION—AFTER-ACQUIRED PROPERTY.**

A chattel mortgage described as covered thereby a lithographic press "and all and singular each and every of the tools, implements, furniture, equipments, and appliances * * * now in my said lithographic establishment, * * * and constituting the plant with which said business is now carried on, and * * * all of the new lithographic machinery, presses, tools, implements, and appliances of every kind that I shall hereafter put into said establishment and plant for the purpose of improving the same or keeping it as good as it is at present." *Held,*

that such mortgage did not cover machinery and appliances subsequently placed in the establishment by the mortgagor for the purpose of adding a new branch of business, and not used in the business of lithographing.

2. BANKRUPTCY—AVOIDANCE OF LIENS—SUBROGATION OF TRUSTEE.

Where, under the law of the state, a chattel mortgage on after-acquired property is valid between the parties, but void as against attaching creditors, a trustee in bankruptcy will not be subrogated by the court to the rights of an attaching creditor, to enable him to defeat the lien of a mortgagee of such property whose mortgage was of record, and who has the superior equity, because the new property was added for the purpose of keeping the mortgaged plant in as good condition as when the mortgage was given.

3. CHATTEL MORTGAGE—AFTER-ACQUIRED PROPERTY—ADDITIONS MADE BY PURCHASER FROM MORTGAGOR.

A chattel mortgage of a mechanical plant, covering additions made to maintain or improve its condition and efficiency, which is valid against the mortgagor, will be enforced as to additions made to the plant for that purpose by a purchaser from the mortgagor, who assumed all his obligations under the mortgage.

In Bankruptcy. On petition of chattel mortgagee to enforce his lien upon property in the hands of the trustee.

J. E. Ludden, for petitioner.
Latson & Bonynge (Paul Bonynge, of counsel), for trustee.

THOMAS, District Judge. March 22, 1900, John E. Green, to secure the payment of money, executed to T. Ellett Hodgskin, trustee, a chattel mortgage, which was duly filed, as were the successive statements thereof. In July, 1901, the Sentenne & Green Company, organized under the laws of New Jersey, succeeded to the business of Green, and to the ownership of the property covered by the mortgage, and duly assumed the payment of the mortgage debt, and the mortgagor's obligations respecting the same. On August 19, 1902, the E. W. Bliss Company, a creditor of the bankrupt, through the sheriff of the county of Kings, levied an attachment upon the entire plant of the company, and on August 22d two other creditors levied junior attachments thereon. On August 26, 1902, while the sheriff was still in possession of said property, the mortgagee assumed to take possession thereof, put a keeper in charge, and duly advertised a sale thereof. On the 28th day of August, 1902, a petition in bankruptcy was duly filed, and the Sentenne & Green Company were adjudicated bankrupt on the 16th day of September, 1902. On the 29th day of August, 1902, a temporary receiver of the property of the bankrupt was appointed, and on the 28th day of October, 1902, a trustee was elected, and subsequently duly qualified. All the property covered or claimed to be covered by the chattel mortgage came into the possession of the receiver so appointed, and later into the hands of the trustee. Thereupon the mortgagee came into this court, and asked that the question of the lien of his mortgage be ascertained. As the property has been taken by the court, and is now subject to its control and direction, it has, upon the alleged lienor's application, power to determine the question of the mortgage lien, notwithstanding the objection of the trustee.

The mortgage states that John E. Green, the mortgagor, has sold to the second party "one Koch lithographic press, and all other goods and chattels mentioned in the schedule hereto annexed, and now in the lithographic establishment owned and conducted by me," to secure the payment of certain indebtedness therein particularly described; and it is further provided that, until there should be default in such payment, the mortgagor should remain in possession of the goods and chattels and the full and free enjoyment thereof, without right, however, to cause or permit the same, or any part thereof, to be sold or removed from the premises therein described. The schedule referred to in the mortgage, signed by the mortgagor, gives, in 15 typewritten pages, all the property upon the premises, and concludes as follows:

"And all and singular, each and every of the tools, implements, furniture, equipments, and appliances, of every name and nature, now in my said lithographic establishment at Nos. 95, 97 and 99 Hudson Street, and Nos. 171 and 173 Franklin Street, Borough of Manhattan, in the City of New York, and constituting the plant with which said business is now carried on; and in and to all of the new lithographic machinery, presses, tools, implements and appliances, of every kind, that I shall hereafter put into said establishment and plant, for the purpose of improving the same or keeping it as good as it is at present."

Between the delivery of the mortgage and the sale of the property to the bankrupt the mortgagor placed other property in the building, and, after purchasing, the bankrupt brought in machinery, tools, implements, etc. The greater part of the property thus added was for the purpose of fashioning into boxes the material that had been subjected to the lithographic process. The mortgagee claims not only the right to the property described in terms in the mortgage, so far as it is in existence, but also all property placed in the factory, whether appropriated to lithographic purposes or to making boxes. The trustee admits that the mortgage, as to property falling within its scope, after-acquired by Green, is valid as between Green, the original mortgagor, and the mortgagee, but that it is invalid as to the trustee, succeeding to the rights of the attaching creditors; and he further insists that the mortgage does not, by its terms, cover the after-acquired property of the Sentenne & Green Company, nor property for making boxes, by whomsoever acquired. Undoubtedly, the provision that after-acquired property, so far as covered by the mortgage, would fall under its lien as it should come into existence and possession of the mortgagor, is valid as between the mortgagor and the mortgagee. Hale v. Bank, 49 N. Y. 626; McCaffrey v. Woodin, 65 N. Y. 459, 22 Am. Rep. 644; Wisner v. Ocumpaugh, 71 N. Y. 113; Coats v. Donnell, 94 N. Y. 169, 177; Kribbs v. Alford, 120 N. Y. 519, 24 N. E. 811; Deeley v. Dwight, 132 N. Y. 59, 30 N. E. 258, 18 L. R. A. 298; Distilling Co. v. Rasey, 142 N. Y. 570, 37 N. E. 632, 40 Am. St. Rep. 635. The trustee relies upon the case last cited to limit the rule that would bring after-acquired property under a mortgage to those cases where the rights of third persons have not intervened, and to maintain that such a mortgage as to after-acquired property is void as against subsequent purchasers or attaching creditors, and also cites in this connection Otis v. Sill, 8 Barb. 102; Edgell

v. Hart, 9 N. Y. 213, 59 Am. Dec. 532; Gardner v. McEwen, 19 N. Y. 123; Farmers' Loan & Trust Co. v. Long Beach Imp. Co., 27 Hun, 89; Brunswick-Balke-Collender Co. v. Stevenson (Sup.) 4 N. Y. Supp. 123; Beebe v. Power Co., 13 Misc. Rep. 737, 35 N. Y. Supp. 1; Hilliman v. Neher, 20 Barb. 37; Jones, Chat. Mortg. § 138.

But it is conceded that in Re New York Economical Printing Co., 49 C. C. A. 133, 110 Fed. 514, the Circuit Court of Appeals of this circuit determined that a trustee was not permitted to attack the mortgage unless he represented a creditor armed with process; but the trustee urges that he is thus enabled by the fact that he has been subrogated by the order of this court to the rights of the creditors who levied attachments upon the after-acquired property, even before there was any attempt to foreclose the mortgage. If the order of subrogation be allowed to stand, the trustee's position seems to be correct. However, passing this inquiry for the moment, the question is considered, what after-acquired property is included in the terms of the mortgage? In the lithographic business, as carried on by Green at the time the mortgage was made, words, devices, colors, etc., were lithographed upon tin. He afterwards took on the business of fashioning the lithographed material into boxes, and for that purpose new machinery was obtained and devoted to this new industry, not only by Green himself, but also by the corporation that succeeded to his interest. Unless there be ambiguity in the language of the mortgage, it is not permissible to look beyond its face to discover the intention of the parties. As already stated, in the body of the mortgage the mortgagor stipulates for the sale of (1) "one Koch lithographic press," (2) "all other goods and chattels mentioned in the schedule hereto annexed and now in the lithographic establishment owned and conducted by me." Following the mortgage is the schedule, which concludes with a clause which brings in all the tools, implements, furniture, equipments, and appliances "now in my said lithographic establishment," and constituting the plant with which said business is now carried on, and in and to all of the new lithographic machinery, presses, tools, implements, and appliances of every kind that I shall hereafter put into said establishment and plant for the purpose of improving the same or keeping it as good as it is at present." This sentence reiterates the statement that the establishment is lithographic in its nature; that the intention is to mortgage everything that constitutes the plant of the business as then carried on at that place; and all the lithographic machinery, presses, etc., that he should put into said establishment and plant, not generally, but for the limited purpose "of improving the same or keeping it as good as it is at present." The mortgagor had a lithographic establishment, not a box-making establishment. He called it a lithographic establishment, and nothing else; and he stipulated that all after-acquired property brought into such an establishment for the limited purpose of improving it or keeping it in its present condition should fall under the lien of the mortgage. At that time the manufacture of boxes may have been within the mind or ambition of Green, but it was not then an actuality. The contemplation of the business was not even suggested in the mortgage, and the mortgage did cover, and was intended to cover, only the property devoted

to his lithographic business. Therefore all after-acquired property brought in and devoted to a purpose not lithographic in its nature does not fall within the mortgage, and the property so excluded is that property that was brought in for and devoted to the purpose of manufacturing boxes. If there be any question of fact as to what machinery is included in the mortgage or excluded therefrom by virtue of this finding, further application may be made to the court upon such evidence as the parties may be advised to take. It may be that the order subrogating the trustee to the rights of the attaching creditors would enable the trustee to take from under the mortgage lithographic machinery added to the plant "for the purpose of improving the same or keeping it as good as it is at present." Equitably the mortgagee is entitled to such property, and, so far as the attachments and the subrogation of the trustee interrupt such equity, the order will be modified by the court.

The trustee urges that after-acquired property supplied by the corporation does not fall within the lien of the mortgage, within the holding of Kribbs v. Alford, 120 N. Y. 519, 24 N. E. 811. In that case the assignee of the mortgaged property was not aware of the existence of the mortgage. In this case the assignee assumed all the obligations of the mortgagor, but, without determining whether the cases may be differentiated, it is here decided that, to the extent that property has been added for the purpose of maintaining or improving the efficiency of the lithographic plant, the clause in the mortgage as to after-acquired property should be deemed operative. That at least is an equitable disposition of the question.